G. E. HARRIS, ADMINISTRATOR OF ROBERT HESTER HARRIS, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 15 March, 1933.)

**Insurance R a—Death in this case held caused by accidental means within terms of insurance policy sued on.**

> Where the insured, voluntarily engaging in a basketball game, is hit in the chest when he and one of his opponents collide, and the blow causes traumatic pneumonia resulting in the death of the insured in a few days, the death is caused by accidental means within the terms of a life insurance policy providing for double indemnity if the insured should die of bodily injury inflicted solely through external, violent, and accidental means or from bodily poisoning or infection occurring simultaneously with and in consequence of such bodily injury, for although collisions with opponents could have been foreseen and the game was voluntarily engaged in, no such injury as suffered by the insured was probable or foreseeable, and, since the death was through accidental means, the distinction noted by some jurisdictions between accidental death and death by accidental means is inapplicable.

APPEAL by defendant from *Daniels, J.,* at August Term, 1932, of PERSON. No error.

Plaintiff's intestate, Robert Hester Harris, died on 18 March, 1931. At the date of his death, two policies of insurance both issued by the defendant, one on 24 February, and the other on 1 April, 1924, each in the sum of $5,000, were in full force and effect. By virtue of the provisions of these policies, the defendant has paid to the plaintiff as the beneficiary named in each of said policies, the sum of $10,000. This sum is the face amount of said two policies of insurance.

13—204

Each of the policies contains a clause in words as follows:

"Double Indemnity. The company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy if, during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability and before any nonforfeiture other than automatic premium loan is in effect, the death of the insured results from bodily injury within ninety days after the occurrence of such injury provided death results directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means, while the insured is sane and sober. Except, these provisions do not apply if the insured shall engage in military or naval service, or any allied branch thereof, in time of war, or in case death results from bodily injury inflicted by the insured himself, or intentionally by another person; or from engaging in aeronautic or submarine operations, either as a passenger or otherwise; or from any violation of law by the insured; or from a state of war or insurrection; or self-destruction, whether during the first policy year or afterwards; or directly or indirectly from bodily or mental infirmity, poisoning or infection other than that occurring simultaneously with and in consequence of bodily injury."

This action is to recover of the defendant under the provisions of the double indemnity clauses in both the policies of insurance issued by the defendant on the life of Robert Hester Harris, deceased, the sum of $10,000.

The insured, Robert Hester Harris, died at the home of his father in Person County, on 18 March, 1931. The physician, who attended him during his fatal illness, first saw him on 11 March, 1931. This physician testified that in his opinion the insured died of pneumonia, which was the result of a traumatic condition. Other physicians who testified as expert witnesses for the plaintiff, were of the opinion that the insured died of traumatic pneumonia. All the evidence at the trial was to the effect that the insured died of pneumonia, which followed a bodily injury suffered by him while he was playing in a game of basketball on the night of 10 March, 1931.

At the date of his death, the insured, Robert Hester Harris, was about nineteen years of age. He was a student at the Roxboro High School, and was a member of the basketball team of said school. On the night of 10 March, 1931, while playing with his team in a game of basketball, he was injured by a player on the opposing team. This player had the ball, and was running with it toward the goal. In accordance with the rules of the game, the insured undertook to prevent this player from throwing the ball into the basket, which was his goal. In the collision between them, the insured was struck by his opponent in his side or on his chest.

The injury was not inflicted intentionally, but was the result of the collision between the insured and his opponent. The insured fell to the floor, and complained immediately of pain in his side or chest. In response to inquiries made by his friends, who urged him to return to the game, the insured said that one of his ribs was broken, and that he could not continue in the game. He retired to the side lines, and was in great pain until the conclusion of the game. He then left in his automobile and drove to the home of his sister, who lived some distance from Roxboro. His mother was waiting for him there. As soon as she discovered that her son was ill, she insisted upon taking him to her home. His condition grew worse from the time they reached their home, until the physician was called to see him the next day. This physician at once suspected that the insured had pneumonia, and later definitely diagnosed his illness as due to pneumonia. From his first visit to the insured on 11 March, 1931, until his death on 18 March, 1931, the physician treated him for pneumonia. As a witness for the plaintiff, this physician testified that the insured died of pneumonia, resulting from a traumatic condition.

The issues submitted to the jury were answered as follows:

"1. Was the plaintiff's intestate, while sane and sober, injured in the chest while engaged in playing a basketball game on the night of 10 March, 1931, as the result of a collision with another player in said game, as alleged in the complaint? Answer: Yes.

2. If so, was said injury effected solely through violent, external and accidental means? Answer: Yes.

3. If so, did plaintiff's intestate's death result within ninety days from 10 March, 1931, directly and independently of all other causes, from said injury? Answer: Yes."

From judgment that plaintiff recover of the defendant the sum of $10,000, with interest from 12 May, 1931, and the costs of the action, the defendant appealed to the Supreme Court.

*F. O. Carver, L. M. Carlton, W. D. Merritt, Pou & Pou and J. L. Emanuel for plaintiff.*

*Brooks, Parker, Smith & Wharton and Cooper A. Hall for defendant.*

CONNOR, J. The defendant on its appeal to this Court contends that there was error in the refusal of the trial court to allow its motion made at the close of all the evidence, that the action be dismissed by judgment as of nonsuit, for that there was no evidence at the trial tending to show that the death of the insured was the result of a bodily injury effected solely through accidental means. The defendant concedes that there was evidence tending to show that the death of the insured was acci-

dental in the sense that it was the unexpected and unforeseen result of the injury suffered by the insured while he was playing in the game of basketball. It contends, however, that the bodily injury which the insured suffered was not accidental in that sense, but was the probable result of the game in which the insured had voluntarily engaged, and that for this reason the defendant is not liable to the plaintiff in this action under the provisions of the double indemnity clauses in the policies issued by the defendant and insuring the life of Robert Hester Harris, deceased.

The distinction between an accidental death and a death by accidental means has been recognized and applied by courts of other jurisdictions in actions to recover on provisions in policies of insurance similar to those contained in the double indemnity clause involved in this action. No case involving such distinction has heretofore been presented to this Court. The distinction, however, was recognized and applied by the Supreme Court of California in *Rock v. Travellers Insurance Co.,* 156 Pac., 1029, L. R. A., 1916E, 1096, by the Supreme Court of Rhode Island in *Kimball v. Massachusetts Accident Co.,* 117 Atl., 228, 24 L. R. A., 726, and by the Supreme Court of Tennessee in *Stone v. Fidelity & Casualty Co.,* 133 Tenn., 673. In each of these cases, it was held that where the death of the insured resulted from his voluntary act, although such death was both unexpected and unforeseen, and for that reason accidental, the death was not caused by accidental means, within the meaning of these words as used in the policy of insurance on which the action was brought. This distinction, if conceded to be sound, is not applicable to the instant case. The insured in this case did not by his own act cause the injury which resulted in his death. He engaged voluntarily in the game of basketball, and while he anticipated collisions during the progress of the game with players on the opposing team, no such injury as that which he suffered by the act of his opponent was probable as the result of the game. This injury was effected by accidental means within the meaning of these words as used in double indemnity clauses in his policies of insurance.

The contention of the defendant that there was error in the refusal of the trial court to allow its motion for judgment as of nonsuit cannot be sustained.

There was no error in the trial of this action. The judgment is affirmed.

No error.