MARJORIE GRAY, FORMERLY MARJORIE CLARK v. STATE CAPITAL LIFE INSURANCE COMPANY.

(Filed 22 March, 1961.)

**1. Evidence §§ 29, 30: Insurance § 46—**

In an action by the beneficiary on an accident policy providing, in addition to death benefits, benefits for hospital and surgical fees and compensation for hospital confinement, and reserving the right to insured to change the beneficiary, a declaration of insured to an officer some time after the fatal injury that insured was shot in an attempt to break in a store, while not competent as a part of the *res gestae, is held* competent as an admission against interest, since the insured and not the beneficiary had a vested interest in the policy at the time the declaration was made.

**2. Insurance § 34—**

"Accidental death" relates to the causation of death while death pro-

GRAY *v.* INSURANCE CO.

duced by "accidental means" relates to the occurence or happening which produces the death, so that death resulting directly from insured's voluntary act and aggressive misconduct is not death by accidental means even though the death be the result of an accidental injury.

**3. Same—**

Evidence tending to show that insured was attempting to break into a store at nighttime and that operator of the store, living on the premises and hearing noises, went on the outside of the building with a gun, and that insured brushed past him while his finger was on the trigger, causing the gun to discharge, inflicting fatal injury, is held to disclose that the death resulted through the means of insured's voluntary act and aggressive misconduct and therefore that his death was not solely the result of external, violent and accidental means within coverage of the policy in suit.

WINBORNE, C.J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Campbell, J.,* September-October Term 1960, of CLEVELAND.

This is an action instituted by the plaintiff to recover the sum of $2,500 under the provisions of an insurance policy, dated 1 December 1958, and issued by the defendant to Bruce E. Clark, naming the plaintiff, Marjorie R. Clark, his mother, as beneficiary. The beneficiary is now Marjorie Gray.

It was stipulated that the policy was in full force and effect at the times involved herein; that Bruce E. Clark came to his death on 15 March 1959 as the result of a gunshot wound inflicted by Sam Lovelace on 14 March 1959; that the plaintiff has made demand of defendant for payment under the terms and provisions of the policy and that the defendant has failed and refused to make payment and denies that it is liable in any amount to the plaintiff.

The policy of insurance involved contains the following provisions with respect to accidental death: "The State Capital Life Insurance Company of Raleigh, North Carolina, does hereby insure the person named as Insured (Bruce E. Clark) in the Schedule against loss resulting directly and independently of all other causes from bodily injuries sustained by the Insured solely through external, violent and accidental means, while this Policy is in force * * *."

Under "Exclusion," the policy contains the following: "The insurance under this Policy shall not cover death, loss of limb, or sight, or other loss caused directly or indirectly, wholly or partly, (1) by the intentional act of Insured or any other person, whether sane or insane * * *."

It was agreed between counsel representing the respective parties,

that the court might hear the evidence in this matter and determine the facts and decide the case without the intervention of a jury.

The court below, on the stipulations and the evidence offered, found the following facts:

"1. The court finds and includes in this judgment, the stipulations entered, which stipulations appear of record.

"2. That Bruce E. Clark, the named assured in the policy of insurance on March 14, 1959, was attempting to break into a building which building was a combination store building and residence, the store portion thereof entering upon the ground floor in front and the residential portion thereof entering from the ground level at the rear, the building itself being situated on a slope; that there was no way of entrance from the living quarters of the building to the store quarters of the building except by going out the entrance of the living quarters in the rear of the building, going up the hill and coming into the store portion from the front.

"3. That Bruce E. Clark on the occasion in question, March 14, 1959, in the night time at about 11 o'clock p.m., unsuccessfully tried to break in the front door to the store portion of the premises, breaking glass out of the door and made other efforts to gain entrance, thereby creating sufficient noise to arouse the owner of the premises who was living in the living quarters on the lower level.

"4. That the owner of the premises, Mr. Sam Lovelace, procured a shotgun, loaded it and went outside the living quarters going around the building for the purpose of seeing what was going on on the upper level at the store entrance; that after ascertaining that the glass of the door had been broken but no entrance had been made, he withdrew to the side of the building when he heard his wife down below scream and the door slam; that thereupon he cocked the gun and about the same time the flood lights or outside lights of the building were turned on; that he was proceeding to return to the lower level and the entrance to the living quarters, but before going around the corner of the building for that purpose, Bruce E. Clark ran around the corner of the building and between Lovelace and the building, the distance between Lovelace and the building being some 3 or 4 feet; that at this time Lovelace had the gun cocked and was carrying it parallel with the ground and about waist level and with his finger on the trigger; that Clark, in trying to run between Lovelace and the building ran into Lovelace, the gun discharged and Clark was shot through the muscle of his right arm and into his chest cavity, thereby producing his death the next day.

"5. That Lovelace had made full preparations for shooting the gun

but did not take aim or deliberately shoot Clark and the actual discharge of the gun came simultaneously or practically simultaneously with Clark bumping into Lovelace as he, Clark, was running around the building."

The findings of fact are supported by the evidence and from such findings the court concluded as a matter of law "that the conduct of Clark on this occasion was such conduct that a reasonably prudent person would or should have known or anticipated that his own misconduct in attempting to break into the building would create circumstances that would render a homicide likely and the death which ensued was not sustained solely through accidental means within the terms and provisions of the policy."

Judgment was accordingly entered to the effect that the plaintiff should recover nothing from the defendant.

Plaintiff appeals, assigning error.

*Horn & West for plaintiff appellant.*
*Allen, Hipp & Steed; Falls, Falls & Hamrick for defendant appellee.*

DENNY, J.  The plaintiff assigns as error the admission in evidence in the hearing below of a statement made by the insured to an officer who arrived at the scene of the shooting a few minutes after it occurred. The officer found Clark lying on the ground at the point where he had been shot and inquired of him as to what happened. He said: "We tried to break in and I got shot."

Spontaneous utterances, in order to be a part of the *res gestae*, must be made "during the happening of the main transaction or immediately and instantly after the transaction and in direct connection with it. They must be forced out, as it were, as the utterance of truth; they must be declarations as to something being done, and not as to what has been done." *Bumgardner v. R.R.,* 132 N.C. 438, 43 S.E. 948; *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757; *Johnson v. Meyer's Co.,* 246 N.C. 310, 98 S.E. 2d 315.

Since some time elapsed between the shooting and the arrival of the officer who interrogated Clark, the statement was not admissible as part of the *res gestae*. However, we think this statement was admissible as a declaration against interest.

The policy of insurance involved, in addition to the death benefits provided therein, contains provisions for hospital benefits and nursing fees, not exceeding $300.00 for each, if such hospital benefits and nursing fees are required as the result of an accident. The policy

also provides for the payment of an amount not exceeding $50.00 for physician's or surgeon's fees, if such fees are required as the result of such accident. Provision is further made for the payment of a weekly income of $50.00 for four weeks if the insured is confined in a hospital as the result of an accident, provided such accidental injuries do not result in any of the losses provided for in Part I of the policy. Moreover, the insured reserved the right to change the beneficiary in the policy without the consent of the beneficiary. Therefore, the plaintiff had no vested interest in this policy at the time the statement under consideration was made. *Pollock v. Household of Ruth,* 150 N.C. 211, 63 S.E. 940; *Wooten v. Order of Odd Fellows,* 176 N.C. 52, 96 S.E. 654.

In *Whitford v. Insurance Co.,* 163 N.C. 223, 79 S.E. 501, a written note from the insured to his wife, in which it appeared the insured was contemplating suicide, was held to be properly admitted as a declaration against interest in an action brought to recover on a life insurance policy.

Likewise, in *Schaffner v. Equitable Life Assur. Soc.,* 290 Ill. App. 174, 8 N.E. 2d 212, which involved an action upon the double indemnity provision in a life insurance policy, it was held that statements of the insured made prior to his death, after he had been shot by an officer, in which the insured admitted he had entered into a conspiracy to commit burglary and was upon the premises to be robbed at the time he and his accomplice were apprehended, was held to be admissible as a declaration against interest. *Smith v. Moore,* 142 N.C. 277, 55 S.E. 275; *Benefit Ass'n. of Railway Employees v. Armbruster,* 221 Ala. 399, 129 So. 78; *Brown v. Mystic Workers of the World,* 151 Ill. App. 517.

It is said in 31 C.J.S., Evidence, section 218 (b), page 960, *et seq.*: "Where a declarant is unavailable as a witness because of his death, it is well settled that evidence may, in a proper case, be received of his declarations against his interest, whether or not such declarations are part of the *res gestae*. The absence of privity between declarant and the parties to the suit does not preclude the admission of his declarations, provided they were adverse to his interests." See also 20 Am. Jur., Evidence, Section 556, page 467, *et seq.*

The plaintiff is relying on the case of *Evans v. Junior Order,* 183 N.C. 358, 111 S.E. 526, as authority for the exclusion of the insured's declaration in this case. We think the cases are distinguishable and that the *Evans* case is not controlling on the facts in the present case. This assignment of error is overruled.

The second assignment of error is based on the plaintiff's objection

to the verdict, the denial of her motion for a new trial, and to the signing of the judgment based on the verdict.

Therefore, the question posed for determination is whether or not the insured's death was the result of accidental means within the terms of the policy.

Our Court has pointed out in a number of decisions that there is an important and fundamental distinction between an "accidental death" and one produced by "accidental means." *Harris v. Insurance Co.*, 204 N.C. 385, 168 S.E. 208; *Mehaffey v. Insurance Co.*, 205 N.C. 701, 172 S.E. 331; *Scott v. Insurance Co.*, 208 N.C. 160, 179 S.E. 434; *Fletcher v. Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687.

In *Fletcher v. Trust Co., supra*, this Court said: " 'Accidental means' refers to the occurence or happening which produces the result and not to the result. That is, 'accidental' is descriptive of the term 'means.' The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the causation — not upon the accidental nature of the ultimate sequence of the chain of causation."

In the case of *Clay v. Insurance Co.*, 174 N.C. 642, 94 S.E. 289, L.R.A. 1918B, 508, in construing the policy of insurance, this Court said: " * * * (I)n case of death by 'external, violent, and accidental means,' without more, we hold that the true test of liability in cases of this character is whether the insured, being in the wrong, was the aggressor, under circumstances that would render a homicide likely as the result of his own misconduct."

In *Scarborough v. Insurance Co.*, 244 N.C. 502, 94 S.E. 2d 558, the insured, Adrian C. Midgett, advanced upon one Baldwin, using vituperative language, and continued to advance as if he intended to do violence to Baldwin's person. Baldwin was on the front porch of his home; he pushed Midgett backwards; Midgett fell and struck his head on a water meter from which injury he died ten days later. The Court held this not to be death by accidental means. *Devin, J.*, later *C.J.*, said: "Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury. 45 C.J.S., 779."

In construing an identical provision in a policy of insurance as that

now before us, in the case of *Mehaffey v. Insurance Co., supra*, we said: "The liability clause of the policy of insurance rested upon death or injury 'solely through external, violent and accidental means.' Therefore, in order to warrant recovery for death in such event, such death must not only be accidental but must be produced by 'accidental means.'"

We think the facts in this case justify the conclusion reached by the court below, to the effect that the conduct of the insured was such that a reasonably prudent person would or should have known or anticipated that his own misconduct in attempting to break into the store operated by Mr. Lovelace, and in which building Mr. and Mrs. Lovelace maintained and occupied living quarters, would create circumstances that would render a homicide likely.

Therefore, we hold that the death of the insured was not produced by "accidental means" within the terms of the policy.

Affirmed.

WINBORNE, C.J., took no part in the consideration or decision of this case.