STATE OF NORTH CAROLINA v. JOHN ANDERSON HOLLOWAY
— AND —
STATE OF NORTH CAROLINA v. LARRY GREGORY JONES

No. 7214SC722

(Filed 25 October 1972)

1. **Constitutional Law § 34; Criminal Law § 26— second degree murder — plea of former jeopardy properly denied**

    Defendant's contention that he was subjected to double jeopardy in his second trial for second degree murder resulting from the failure of the court at his first trial to submit a possible verdict of second degree murder, such failure being tantamount to an acquittal of the charge of murder in the second degree, was untenable where the court at the first trial submitted the possible verdict of "aiding and abetting Phillip Jones or John Holloway in the offense of second degree murder."

2. **Criminal Law §§ 40, 91— motion to use transcript from former trial — motion to continue — denial within discretion of trial court**

    Denial of defendants' motions to continue and to use the transcript of testimony of a witness from a previous trial did not con-

stitute abuse of discretion where the motion to continue was not supported by affidavits setting out the reasons for the motion and where no showing was made of attempts to secure presence of the witness whose transcript defendants sought to introduce.

3. **Criminal Law § 43— photograph admissible — no limiting instruction requested**

The trial court did not err in a murder prosecution in allowing the jury to examine a photograph of deceased without instructing that the photograph could be considered only for the purpose of illustrating the testimony of a witness, since such limiting instruction is not required, absent a timely request therefor.

4. **Criminal Law § 169— prejudicial evidence excluded — motion for mistrial properly denied**

Motion for mistrial was properly denied where any possible prejudice which might have resulted from an improper question was cured by the trial court's prompt action in sustaining defendants' objection to the question and directing the jury to disregard the question and answer.

5. **Criminal Law § 80— admissibility of testimony given from notes of police officer**

A police officer could properly testify from notes typed by a third person some three months after the alleged homicide, as the recorded past recollection of a witness may properly be read by that witness.

APPEAL by defendants from *Martin, Robert M., Judge,* 13 March 1972 session of Superior Court held in DURHAM County.

Defendants John Anderson Holloway and Larry Gregory Jones were charged in bills of indictment, proper in form, with murder. Upon defendants' pleas of not guilty, the State offered evidence tending to show the following.

The deceased, William Worsley, died of a .22 caliber gunshot wound which pierced the brain, producing hemorrhage and death. The gunshot wound was inflicted at the home of James Albert Jones where deceased was a guest during the night of Saturday and early morning of Sunday, 12 and 13 April 1969. In the early morning hours of Sunday, the defendant John Holloway and his son Larry Jones pushed their way into the Jones' home. Holloway was carrying a shotgun and Larry Jones was carrying a .22 caliber rifle. The deceased and Holloway began fighting over the shotgun and they "scuffled" into the kitchen with defendant Larry Jones in pursuit. Larry Jones fired the rifle as he entered the kitchen and a second shot was fired "a minute or two later." After the second shot, Larry

Jones stated: "Turn that damn door aloose or I am going to kill you." Phillip Jones, Larry's brother, entered the kitchen through a rear door, carrying a "long gun." A third shot was fired; whereupon, defendants Holloway and Larry Jones and Phillip Jones exited through the front door.

Patrolman Day of the Durham Police Department was present when Officer Hales of the Durham Police Department arrived at the James Jones home at approximately 3:00 a.m. The deceased was lying face down with a hole in his head and Officer Day believed that he was dead. Three unexpended shotgun shells and two expended .22 caliber rifle shells were on the floor.

After their investigation at the James Jones residence, Officers Day and Owens proceeded to the home of John Holloway where they found Larry Jones seated on a sofa inside and Holloway in the back yard, with a .22 caliber rifle. Unexpended cartridges and shotgun shells were found in the pockets of both Holloway and Larry Jones. A .22 caliber rifle and a shotgun were found approximately 75 feet behind the Holloway home, near a trash can.

After being advised of his constitutional rights, defendant Holloway stated, "I know all of that, I know you, I done you a favor, I shot him."

On the basis of information furnished him by witnesses in the James Jones home, Detective Cameron proceeded to arrest Phillip Jones, charging him also with the homicide of the deceased.

Defendant Larry Jones testified that on Saturday, 12 April 1969, the deceased came to the home of defendant Holloway at approximately 2:00 p.m. and said, "Larry, my wallet is missing, and I don't know who got it, but I am going to shoot you and your father and your brother if I don't get it." At approximately 11:30 p.m. that night, the deceased returned to the Holloway home and stated, "You better get ready I will be back to shoot up the place." A few minutes later, deceased fired one or two shots. Defendants were concerned for the safety of Phillip Jones. They armed themselves with a .22 caliber rifle and a shotgun and went to the home of James Jones. After entering the home of James Jones, Worsley attacked defendant Holloway " . . . by grabbing the shotgun and saying,

'I am going to kill you, you son of a bitch.'" Defendant Holloway was pulled into the kitchen by the deceased and was thrown to the floor. Worsley then began fighting defendant Larry Jones and managed to pick up the rifle Larry Jones had been carrying and aim it at Larry Jones. At that point, a shot was fired, and defendant Larry Jones "turned around and saw his brother Phillip there with a 22 rifle in his hand."

Lewis Edward Green testified that shortly before midnight, 12 April 1969, he saw the deceased carrying a rifle and was told by the deceased that "he was going to kill the Holloways. That is Larry Jones and Phillip. That Worsley said a pocketbook band watch and something was stole from him and he was going to kill them."

Ann Belcher testified that the deceased stated to her at approximately 11:00 p.m., 12 April 1969, "Annie, don't be in John Holloway's house between 11:30 and 12:00 o'clock . . . I'm going to shoot this house up."

Grover Neal, a roomer in the Holloway home, testified that on Sunday, 13 April 1969, he found a bullet stuck in the side of the door facing and a broken window in the Holloway home.

Numerous witnesses testified that the deceased had the reputation of a dangerous man in the community.

Each defendant was found guilty of second degree murder. From judgments imposing prison sentences of eight to ten years, Larry Jones, and eighteen to twenty years, John Holloway, defendants appealed.

*Attorney General Robert Morgan and Associate Attorney Edwin M. Speas, Jr., for the State.*

*James R. Patton and C. Horton Poe, Jr., for defendant appellants.*

HEDRICK, Judge.

[1] Defendant, Larry Jones, assigns as error the court's denial of his plea of "former jeopardy." At the 7 July 1969 session of Superior Court held in Durham County, the defendants Larry Jones and John Holloway along with Phillip Jones were tried under separate bills of indictment charging them with the murder of William Worsley. At the first trial, defendant Larry

Jones was found "guilty of aiding and abetting Phillip Jones or John Holloway in the offense of murder in the second degree." On appeal, this court awarded all three defendants a new trial when it appeared that the court committed error in not submitting to the jury a possible verdict of manslaughter. *State v. Holloway*, 7 N.C. App. 147, 171 S.E. 2d 475 (1970). Larry Jones now contends that the trial court's failure at his first trial to submit a possible verdict of second degree murder was tantamount to an acquittal of the charge of murder in the second degree, and that his plea of "former jeopardy" should have been sustained. This contention has no merit simply because the judge at the first trial, by submitting the possible verdict of "aiding and abetting Phillip Jones or John Holloway in the offense of second degree murder," in effect did submit a possible verdict of murder in the second degree. *State v. Holloway, supra; State v. Johnson*, 272 N.C. 239, 158 S.E. 2d 95 (1967) ; *State v. Taft*, 256 N.C. 441, 124 S.E. 2d 169 (1962) ; *State v. Peeden*, 253 N.C. 562, 117 S.E. 2d 398 (1960) ; *State v. Spencer*, 239 N.C. 604, 80 S.E. 2d 670 (1954).

[2] Assignments of error two, three and four relate to the court's denial of the defendants' motion to consolidate their trial with that of Phillip Jones, and with the denial of their motions to continue and to use the transcript of the testimony of Phillip Jones from the previous trial.

Ostensibly, the defendants sought to have their case continued so they could obtain the presence of Phillip Jones as a witness; however, their motion to continue was not supported by affidavits setting out the reasons for the motion. Furthermore, their motion to use the transcript of testimony of Phillip Jones from a previous trial was not supported by affidavits setting out either the reasons therefor or what they had done to secure his presence as a witness. Indeed, in response to the judge's inquiry as to what had been done to secure the presence of the witness, counsel for defendants stated that they had done nothing. Such motions are addressed to the discretion of the trial judge and his rulings thereon will not be upset on appeal absent a showing of such abuse of discretion as would deprive the defendants of a fair trial. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968) ; *State v. Gibson*, 229 N.C. 497, 50 S.E. 2d 520 (1948) ; *State v. Walker*, 6 N.C. App. 447, 170 S.E. 2d 627 (1969), cert. denied 277 N.C. 117 (1970) ; 29 Am. Jur. 2d *Evidence* § 755 (1967). Defendants

have failed to show any abuse of discretion by the trial judge in denying their several motions. These assignments of error are overruled.

[3] Defendants next assign as error that "the Court permitted the State to hand the Jury, for their own personal examination, seven (7) photographs of the deceased that had been used for the purpose of illustrating without further instructing the Jury that the photographs could only be used to illustrate the testimony of a witness." This contention is without substance for it appears that only one photograph of the body of the deceased was exhibited to the jury. Furthermore, absent a timely request, the failure to give a limiting instruction is not prejudicial error. *State v. Casper,* 256 N.C. 99, 122 S.E. 2d 805 (1961), cert. denied 376 U.S. 927, 11 L.Ed. 2d 622, 84 S.Ct. 691 (1964); *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939).

[4] Defendants assert that the trial court erred in failing to grant a mistrial after the solicitor asked a witness about a verdict at a previous trial. Any possible prejudice which might have resulted from the question was cured by the trial court's prompt action in sustaining defendants' objection to this question and in directing the jury to disregard the question and answer. The court did not err in denying the motion for mistrial.

[5] Defendants next contend that the trial court erred in "permitting a police officer to testify on rebuttal from police notes typed by a third person some three months after the alleged homicide and to read from the police records alleging statements that the defendant had made." The recorded past recollection of a witness may properly be read by that witness. Stansbury, N.C. Evidence 2d § 33 (1963). The fact that the report may not have been recorded until several months after the event lessens the weight that should be attributed to that statement, but does not render it incompetent. This assignment of error is overruled.

Defendants next challenge the trial court's denial of their motions for judgments as of nonsuit. There was sufficient evidence to require submission of the case to the jury and to support the verdict.

All of the defendants' assignments of error, including those based on exceptions to the court's instructions to the jury, have been carefully considered and found to be without merit.

We hold that the defendants had a fair trial free from prejudicial error.

No error.

Judges VAUGHN and GRAHAM concur.