CLOTELLE M. FISHER v. CARRIE McDANIEL THOMPSON

No. 8026SC503

(Filed 3 March 1981)

1. Evidence § 29.2— investigating officer's accident report — exclusion not prejudicial to plaintiff

In an action to recover for injuries sustained by plaintiff in an automobile accident, the accident report prepared by the investigating officer in the normal course of his employment qualified for admission under the hearsay exception for entries made in the regular course of business; however, the trial court's exclusion of portions of the accident report was not prejudicial to plaintiff, since plaintiff sought to introduce portions of the report concerning an eyewitness's statement to the officer that defendant ran the red light and concerning the name of the person who was given a ticket for running the red light; the eyewitness subsequently testified repeatedly that defendant had run a red light while plaintiff's light was green; and defendant admitted in her testimony that the officer had given her a ticket for running the red light and that she had pled guilty to the charge in a subsequent court appearance.

2. Automobiles § 45— injury sustained in automobile accident — evidence not prejudicial

In an action to recover for injuries sustained by plaintiff in an automobile accident, plaintiff failed to show that she was prejudiced by defense counsel's introduction of irrelevant testimony tending to show (1) what treatment plaintiff had received for her injury from an earlier automobile accident, since that evidence related to the issue of damages, not liability, which the jury did not reach by reason of its conclusion that plaintiff was contributorily negligent; (2) that plaintiff had received her full salary during her absence from work as a schoolteacher because she had sick leave, though that evidence violated the collateral source rule, since that evidence, too, concerned only the issue of damages; (3) that plaintiff's counsel in this action had also represented her with respect to her claim arising out of the earlier automobile accident, and counsel stipulated to the court in the presence of the jury that he had represented plaintiff in the earlier action; and (4) the amount of settlement plaintiff received for the earlier accident, since the jury was not even in the courtroom during this part of plaintiff's testimony.

3. Evidence § 34.1— plaintiff's statement against her interest— admissibility of hearsay evidence

In an action by plaintiff to recover for injuries sustained in an automobile accident, the trial court did not err in allowing defendant to testify that he heard plaintiff tell a third person at the hospital that she was "going to get a lot of money out of this accident," since plaintiff's statement was sufficiently against her interest to qualify as an admission of a party-opponent; in addition, defendant's further testimony that plaintiff told the third person in the hospital that defendant was in the wrong could not have prejudiced plaintiff's case, since it actually reinforced defendant's previous admission that she had been given a ticket for

running a red light.

**4. Automobiles § 79— intersection accident — sufficiency of evidence of contributory negligence**

   In an action to recover for injuries sustained by plaintiff in an automobile accident at an intersection, the trial court did not err in refusing to set aside the verdict finding plaintiff contributorily negligent where both plaintiff and an eyewitness testified that defendant caused the collision by running a red light; defendant admitted she was given a ticket for this and pled guilty to the charge; she nevertheless repeatedly denied that she had actually run the light but testified that a slow-down in her lane of traffic had caused her to be caught under the light as it turned red; and defendant also elicited some evidence from the eyewitness indicating that plaintiff may have been speeding when she crossed the intersection.

APPEAL by plaintiff from *Riddle, Judge.* Judgment entered 7 February 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 22 January 1981.

Plaintiff brought a negligence claim for injuries she sustained in a two-car collision. The jury found that, though defendant was negligent, plaintiff was contributorily negligent and was not, therefore, entitled to recover any damages in this action.

Plaintiff presented the following evidence. Plaintiff and defendant were involved in an automobile accident on 22 March 1976 at the intersection of Stonewall Street and Church Street in Charlotte. Plaintiff was driving a Plymouth, and defendant was driving a 1973 Oldsmobile. The accident was reported to the police department at 3:15 p.m., and Officer E. Smith, Jr., arrived at the scene five minutes later. Officer Smith did not have an independent present recollection of this particular accident or what occurred during his investigation of it. He was, however, permitted to testify, in part, using the written accident report he filled out concerning these events:

> Vehicle number one is Mrs. Thompson, the Defendant. Vehicle number two is Mrs. Fisher. Reading from the report, driver of vehicle number one stated she was headed west on Stonewall Street, and that she thought the light in her direction of travel was green. The driver of vehicle number two stated that the light in her direction of travel was green, and that the driver of vehicle number one ran the red light.

Officer Smith also stated that he had given a ticket in connection with the accident.

Defendant testified as an adverse witness for plaintiff. Defendant admitted that Officer Smith had given her a ticket for running a red light on this occasion. She pled guilty to the offense in court on 15 April 1976. Defendant, however, denied that the accident was her fault and stated that she had started across the intersection while her stoplight was green. Then she had to stop in a line of traffic: "I got caught under the light. I didn't say I had crossed the street. I say the impact took place here in the intersection."

Roy Kevin Dawkins was in the car behind plaintiff. His eyewitness testimony as to how the accident occurred contradicted defendant's version.

> We were stopped at the light, both of us. I was behind her [plaintiff]. I was looking around as the light turned green. She proceeded on and I proceeded on, and at the time she did she was struck.
> ... The Defendant's light was red when we started into the intersection because ours was green. ...
> ... I heard the Defendant testify that there was a car ahead of her that had her stopped out in the intersection. I didn't see that car. There were not any cars ahead of us in the intersection prior to the accident because I was directly behind her [plaintiff] and she was the front car at the light.

Plaintiff's own testimony did not vary from that of Mr. Dawkins. She stated that she began to cross the intersection while the light facing her was green. Then she saw "[defendant's] car coming. There's a kind of a hill there. This car was approaching me. No, I didn't see that car stop at any time at all. It was in motion the whole time." Plaintiff then testified more specifically about her injuries, pain and the type of treatment she received from Dr. Carlisle after the accident. She admitted that she had been in another car accident only a short while before but insisted that injuries from the prior accident mainly affected her neck while the instant injuries concerned her back. Dr. Carlisle, as an expert in the field of chiropractic, testified about the extent and nature of plaintiff's injuries and the treatment she received after the accident on 22 March 1976.

*Thomas T. Downer and John B. Walters, for plaintiff appellant.*

*Walker, Palmer and Miller, by James E. Walker and Raymond E. Owens, Jr., for defendant appellee.*

VAUGHN, Judge.

Plaintiff brings forward many assignments of error regarding evidentiary matters at trial and the judge's refusal to set aside the verdict. At the outset, we must cite plaintiff's counsel with multiple violations of the Rules of Appellate Procedure. Exceptions nos. 6, 18, 37, 42, 43, 44, 45, 46 and 48 are deemed abandoned because they are not supported in the brief with some reason, argument or authority. App. R. 28(b)(3). Arguments in support of Exception no. 40 cannot be considered since it is not made the basis of an assignment of error in the record, App. R. 10(c), and it is not set out in the brief, App. R. 28(b)(3). Exceptions nos. 48, 49 and 50 are also abandoned because they are not set out in the brief. Finally, arguments supporting exceptions nos. 8, 9, 10, 11, 12 and 13 on the ground of irrelevancy must be ignored because they are not assigned as error in the record on this basis, nor are they appropriately set out in the brief under the pertinent issue. App. R. 10(c), 28(b)(3). We shall now examine the exceptions which were properly preserved for appellate review.

**[1]** First, plaintiff argues that the court should have allowed the investigating officer to read to the jury the accident report in its entirety. Officer Smith testified that he prepared the report in the normal course of his employment and that it was standard procedure to do so shortly after investigating an accident. He authenticated the report by identifying the handwriting thereon as his own. Thus, it appears that the contents of the report qualified for admission under the hearsay exception for entries made in the regular course of business. *See* 1Stansbury, N.C. Evidence § 155 (Brandis rev. 1973); *see generally* Annot., 77 A.L.R. 3d 115 (1977). In *State v. Connley,* the Court held that oral dispatches from a trooper to the Virginia State Police control station were admissible in the same way written entries in the regular course of business were but noted that:

> [the] portion of these dispatches which reported defendant's threat to kill Fisher [trooper] if anyone attempted to impede their progress to Atlanta is a classic example of "double hearsay". "[T]here is no good reason why a hearsay declaration, which

> within itself contains a hearsay statement, should
> not be admissible to prove the truth of the included
> statement, if both the statement and the included
> statement meet the tests of an exception to the hear-
> say rule.

295 N.C. 327, 344-45, 245 S.E. 2d 663, 673-74 (1978), *modified on other grounds*, 297 N.C. 584, 256 S.E. 2d 234, *cert. denied*, 444 U.S. 954 (1979).

Here, the judge excluded the portion of the accident report which recorded Dawkins' statement that defendant ran the red light. Plaintiff suggests that the evidence was admissible as *res gestae*. We must disagree. Even though the officer arrived on the scene within five minutes of the accident, that lapse of time is sufficient to remove the statement from the realm of spontaneous utterances. *See State v. Sparks*, 297 N.C. 314, 255 S.E. 2d 373 (1979); *Gray v. Insurance Co.*, 254 N.C. 286, 118 S.E. 2d 909 (1961); *State v. Murray*, 21 N.C. App. 573, 205 S.E. 2d 587 (1974). Dawkins' statement to Officer Smith as recorded in the report was "hearsay within hearsay"; nevertheless, it was probably competent as past recollection recorded. Officer Smith remembered filling out the report, but said he had no present independent memory of the events or conversation contained therein apart from the writing itself. Without question, the requirements for admission as past recollection recorded were met. *See* 1 Stansbury, N.C. Evidence § 33 (Brandis rev. 1973). In *State v. Holloway*, our Court applied this rule of evidence to permit "a police officer to testify on rebuttal from police notes typed by a third person some three months after the alleged homicide and to read from the police records alleging statements that the defendant had made." 16 N.C. App. 266, 271, 192 S.E. 2d 75, 79 (1972). The accident report in this case is certainly more trustworthy since it was in the officer's own handwriting and had been prepared shortly after the investigation. Moreover, it is significant that the Court in *Holloway, supra,* did not even discuss the possibility of a double hearsay problem and admitted the entire police record, including statements made by defendant, as past recollection recorded.

As a general matter then, the accident report should have been admitted. This error does not, however, require a new trial unless plaintiff's case was adversely affected by the exclusion. G.S. 1A-1, Rule 61. The critical portions of the report which plaintiff sought to

introduce were: (1) the eyewitness's statement to the officer that defendant ran the red light and (2) the name of the person who was given a ticket for running a red light. We hold that the record demonstrates that plaintiff did not suffer any prejudice.

In his direct testimony, Dawkins confirmed that he had talked with the officer and, consistent with that prior statement, affirmatively and repeatedly testified that defendant had run a red light while plaintiff's light was green. In addition, it appears, on page 43 of the record, that the judge later repented from his earlier ruling excluding that portion of the report recording Dawkins' statement. Plaintiff's counsel read the following to the jury:

> MR. DOWNER: From the police officer's report: "The witness stated he was behind the vehicle and that vehicle number 1 ran the red light." That was the only part we wanted to get in. That was from the official report at the time of the accident.

It is obvious that no prejudicial error was committed in this regard.

It is equally clear that the judge acted properly when he refused to allow Officer Smith to read from the accident report the name of the person cited for a traffic offense. The following developed during the direct examination of the officer:

> I did have an opportunity to make any arrests or give any tickets or citations at the time of this accident.
> A. I cited Mrs. Fisher.
> A. Correction.
> MR. WALKER: OBJECTION.
> COURT: OVERRULED.
> A. Mrs. Frazier. Correction.
> Q. Well, strike that question, strike that question. There's a mistake on the report.
> MR. WALKER: Well, I OBJECT to him saying there's a mistake on the report.
> Q. Well, okay, go ahead and read it, the name that you have under the arrest.
> A. On the arrest—
> MR. WALKER: Well, I OBJECT to him reading anybody's name under the arrest.
> COURT: SUSTAINED.

Plaintiff has no grounds for complaint. Her own counsel requested that his question, asking the name of the person that had been given a ticket, be stricken because of the apparent mistake on the report. It was, in fact, beneficial to plaintiff that Officer Smith was not permitted to testify further on this point. Plaintiff, nevertheless, contends on appeal that the officer should have been allowed to correct the mistake on the report. The excerpt from the record, *supra*, shows that no such request was made at trial. Plaintiff, in her brief, has not cited any authority for the proposition that a witness, who has no present memory of an event apart from a writing, may correct a portion of that writing in his oral testimony. The theory supporting admission of the accident report, as a business record or past recollection recorded, is that a written account of an event entered by a witness at a time near to that of the occurrence is inherently trustworthy and reliable. It would, therefore, be incongruous to hold that Officer Smith, who did not have a present recollection of the accident, should have been permitted to correct an alleged mistake on the report. Even if an oral correction of a written report were proper, plaintiff could not have been prejudiced by its exclusion since defendant admitted in her testimony that the officer had given her a ticket for running a red light and that she had pled guilty to the charge in a subsequent court appearance.

[2]   Plaintiff next argues that defense counsel improperly elicited irrelevant testimony on several occasions. To receive a new trial on this ground, plaintiff must demonstrate the following: (1) that the evidence did not have *any* logical tendency to prove a fact in issue and (2) that its improper admission misled the jury or prejudiced her case. *See State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973); 1 Stansbury, N.C. Evidence § 77, at 234-35 (Brandis rev. 1973). The two-part test for a new trial has not been met in this case.

On cross-examination, plaintiff was asked what treatment she had received for her injury from the earlier automobile accident in February. We cannot say that a description of her prior treatment lacked any tendency to prove a fact in issue: to wit, whether the injuries, for which she was presently seeking damages from defendant, were proximately caused by the March accident. Plaintiff contended at trial that only her neck was injured in February and that her back injuries were entirely due to the wreck involving defendant in March. The same chiropractor, Dr. Carlisle, treated

plaintiff in connection with both incidents. A comparison of the types of treatment she received after each accident tended to present some evidence to the jury from which it might have inferred that the March accident had caused, at most, an aggravation of preexisting injuries. In addition (as is true with other evidence to which plaintiff takes exception, *infra*), this evidence, even if improperly admitted, could not have prejudiced her case since it related to the issue of damages, not liability. which the jury did not reach by reason of its conclusion that plaintiff was contributorily negligent.

Plaintiff also objected to questions about whether she had received her full salary, during her absence from work as a school-teacher, because she had sick leave. She contends that evidence of her sick leave pay violated the collateral source rule. We agree. "Evidence of plaintiff'ş receipt of benefits from his injury or disability from collateral sources generally is not admissible to reduce his claim for damages." 1 Jones, Evidence § 4.48, at 480-81 (6th ed. 1972). The majority rule excludes evidence of the wages, salary or commissions paid to the plaintiff by an employer during the period of disability, regardless of whether such payments were gratuitous or in discharge of a legal obligation. Annot., 7 A.L.R. 3d 516, 520 (1966). A tort-feasor should not be permitted to reduce his own liability for damages by the amount of compensation the injured party receives from an independent source. We believe that proper enforcement of this policy requires that sick leave benefits be included within the protection of the collateral source rule. Authority in other jurisdictions supports this view. 7 A.L.R. 3d 516, *supra*, at 120 (Supp. 1980). Even though this evidence concerning plaintiff's sick leave was irrelevant, the error was not prejudicial because it, too, only concerned the issue of damages.

Plaintiff was asked several times whether her present counsel, Mr. Downer, had also represented her with respect to the claim arising out of the February accident. This was not germane to any of the facts in issue. Nevertheless, the error was harmless, and it appears that counsel waived his objections by stipulating to the court, in the presence of the jury, as follows:

> Your Honor, I will stipulate that I represented Mrs. Fisher and consulted with her concerning the accident in February, the automobile accident she had on February 10th. I will also stipulate that I also represented her in the

accident that she had on March 22nd. I hope that I'm her
family lawyer.

Exceptions nos. 29, 30, 31, 32, 33 and 34 are, therefore, overruled.
Defense counsel also questioned plaintiff about the amount of the
settlement she received for the February accident. Of course, this
was improper and totally irrelevant to the claim concerning the
March wreck. Plaintiff's exceptions on this point are not, however,
well taken. The record before us (pages 39 and 40) discloses that the
jury was not even in the courtroom during this part of her testi-
mony. Plaintiff's case could not have been affected by it, and excep-
tions nos. 35 and 36 are overruled. The question asking Dr. Carlisle
how much he charged plaintiff for treating her injuries from the
February accident was not irrelevant. He stated that he charged
her $232.00 in connection with the first accident and approximately
$700.00 for treatment of injuries from the second one. Since he
treated her for both accidents, this testimony was related to the
issue of damages in that it tended to show whether the medical
expenses being claimed by plaintiff as part of her total compensa-
tion were reasonable.

Plaintiff next contends that defense counsel improperly used
leading questions. On cross-examination of his own client (who had
been called as an adverse witness for plaintiff), defense counsel
asked two leading questions (see exceptions nos. 9 and 10). The
general rule is that leading questions may be asked on cross-
examination, but the cross-examiner may be barred from doing so
"when the witness is not in fact unwilling or hostile." 1 Stansbury,
N.C. Evidence § 31, at 84 (Brandis rev. 1973). Even so, the rulings of
the judge on the use of leading questions are discretionary and may
not be reversed absent an abuse of that discretion. *Id.* at 85. No such
abuse exists here. In addition, we specifically find that the ques-
tions identified by exceptions nos. 8 and 11 are not leading and that
exceptions nos. 12 and 13 could not have been taken to the form of
the questions.

[3]  We shall now consider plaintiff's contentions about the im-
proper admission of hearsay testimony. Defendant was allowed to
testify to the following:

I was sitting over there at the hospital talking, I heard the
Plaintiff say that she didn't have to worry about this
accident, that they said I was in the wrong.

Q. She said that the other person didn't have to worry about it because of what?

A. Because the officer said that I was in the wrong, and she was going to get a lot of money out of this accident.

MR. DOWNER: OBJECTION.

COURT: OVERRULED.

Q. She mentioned having been in another one?

MR. DOWNER: OBJECTION.

COURT: OVERRULED.

Q. Did she have any conversation with someone in your presence about any other accident other than this one?

A. The third party —

MR. DOWNER: OBJECTION.

COURT: OVERRULED.

Q. Go ahead.

A. She had, with the third party. They were talking.

Q. What did you hear the third party say to the Plaintiff.

MR. DOWNER: OBJECTION.

COURT: OVERRULED.

Q. Go ahead.

A. He told her that she had been in an accident not long ago, and that's the second car she had torn up.

MR. DOWNER: OBJECTION. Move to strike.

COURT: Denied.

Q. Go ahead.

A. He told her not to worry about it, she was going to get some money out of this.

MR. DOWNER: OBJECTION. Move to strike.

COURT: Denied.

It is clear that defendant had already begun testifying about the content of plaintiff's conversation with a third party before counsel interposed his first objection to this line of questioning. Nevertheless, we have considered the substance of plaintiff's objections and find that they were all properly overruled.

As a general matter, the declarations of a party to a suit, if pertinent and not subject to exclusion by a specific rule, are always admissible against him. *State v. Willard,* 293 N.C. 394, 404, 238 S.E. 2d 509, 516 (1977); *Stone v. Guion,* 222 N.C. 548, 550, 23 S.E. 2d

907, 908 (1943); *Tredwell v. Graham,* 88 N.C. 208, 216 (1883). To be admissible, a party's utterances need not have been against his interest when made. *State v. Cobb,* 295 N.C. 1, 14, 243 S.E. 2d 759, 766-67 (1978). Plaintiff's statement, that she would get a lot of money out of the accident, was, however, sufficiently against her interest to qualify as an admission of a party-opponent. The rationale for this exception to the hearsay rule is that it would be illogical "to permit a party to object to the reception of *his own* declarations on the ground of hearsay." 2 Stansbury, N.C. Evidence § 167, at 6 (Brandis rev. 1973). It would, therefore, be inappropriate to exclude what plaintiff said as hearsay. We note, in addition, that defendant's testimony that plaintiff told the third party that *defendant* was in the wrong could not have prejudiced *plaintiff's* case since it actually reinforced defendant's previous admission that she had been given a ticket for running a red light.

The introduction of the third party's statement, through defendant's testimony, that this was the second car plaintiff had "torn up," was also not objectionable. The statement was not offered to prove the truth of the matter asserted, but only for the mere purpose of showing that the statement was made. Declarations offered for nonhearsay purposes are always admissible. *See Spillman v. Hospital,* 30 N.C. App. 406, 227 S.E. 2d 292 (1976); 1 Stansbury, N.C. Evidence § 141 (Brandis rev. 1973). Moreover, even if we were to assume that the statement should have been excluded, the error would not have been prejudicial since plaintiff later testified, at length, about the earlier accident in February. In sum, we question the sincerity of plaintiff's concern with this testimony on appeal since she made no attempt whatsoever to discredit it at trial, though she was free to rebut any of its possible implications in her later testimony.

Plaintiff also claims that a question asking her what injury she sustained in the prior accident was improper hearsay. We disagree. The classic definition of hearsay is that "[e]vidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person *other than the witness* by whom it is sought to produce it." *Chandler v. Jones,* 173 N.C. 427, 428, 92 S.E. 145, 146 (1917) (emphasis added). Plaintiff was obviously qualified to give a general description of her injuries, and such testimony cannot be characterized as hearsay. The exception to the question about the number of x-rays done by Dr. Carlisle has no merit since plaintiff did not answer it.

Dr. Carlisle testified as a medical expert in the field of chiropractic for plaintiff. He stated that he requested an orthopedic surgeon, Dr. McBryde, to examine plaintiff and x-ray her lower back. An objection by defendant to the following question was sustained: "What if anything, did Dr. McBryde confer with you on concerning this accident?" Plaintiff contends that the question should have been allowed and cites *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). In *Booker*, the Court held that it was not error to permit a testifying doctor to base his opinion in part on a medical history received from another treating physician. The Court reasoned that "medical information obtained from a fellow-physician who has treated the same patient [is] 'inherently reliable.'" *Id.* at 479, 256 S.E. 2d at 202. On the record before us, we hold that *Booker* is inapposite. Strictly speaking, the question asked Dr. Carlisle what Dr. McBryde *said* and was not a request for him to form an opinion based on information received from another treating physician. In any event, we could not sustain an exception to the exclusion of evidence when the record does not disclose what that excluded evidence would have been. *State v. Hedrick*, 289 N.C. 232, 237, 221 S.E. 2d 350, 354 (1976); *Service Co. v. Sales Co.*, 259 N.C. 400, 411, 131 S.E. 2d 9, 18 (1963).

[4]  Plaintiff's final assignment of error is to the judge's refusal to grant her motion to set aside the verdict as being against the greater weight of the evidence. This motion is addressed to the judge's sound discretion, and we may not reverse his ruling thereon unless a manifest abuse of discretion is shown. *Britt v. Allen*, 291 N.C. 630, 231 S.E. 2d 607 (1977); *see also Mumford v. Hutton & Bourbonnais Co.*, 47 N.C. App. 440, 267 S.E. 2d 511 (1980). Both plaintiff and an eyewitness testified that defendant caused the collision by running a red light. Defendant admitted she was given a ticket for this and pled guilty to the charge. She, nevertheless, repeatedly denied that she had actually run the light but testified that a slow-down in her lane of traffic had caused her to be caught under the light as it turned red. Defendant also elicited some evidence from the eyewitness indicating that plaintiff may have been speeding when she crossed the intersection. Viewed in this light, the judge did not abuse his discretion in refusing to set aside the jury's verdict which was duly rendered upon sufficient competent evidence.

We conclude the trial was free from prejudicial error and

overrule all assignments of error.

No error.

Chief Judge MORRIS and Judge BECTON concur.