STATE v. ROBERT L. MARTIN.

(Filed 9 November, 1921.)

**1. Evidence—Motions to Dismiss.**

A motion to dismiss a criminal action will be denied if the evidence favorable to the State is sufficient to sustain a conviction, without considering that upon which the defendant relies.

**2. Criminal Law—Producing Abortion—Evidence—Motion to Dismiss—Statutes.**

Where the defendant is tried under C. S., 4226 and 4227, for producing a miscarriage or abortion of a pregnant woman, the action will not be dismissed upon the evidence if it is sufficient for a conviction upon either count.

**3. Same—Questions for Jury—Trials.**

Upon the trial in this action, wherein the defendant was indicted for procuring the miscarriage or abortion of a pregnant woman, under the provisions of C. S., 4226 and 4227, testimony of the relation between the

STATE *v.* MARTIN.

defendant and the woman, his paying half of the doctor's fees, and his concern as to the result, is *held* sufficient to sustain the verdict of guilty, taken in connection with the other evidence in the case.

4. **Physicians—Evidence—Privilege—Statutes—Compelling Testimony— Court's Discretion.**

The principle by which a physician may not be compelled to divulge communications and other matters which have come to his knowledge by observation of his patient is regulated by statute, and under the provisions of our C. S., 1798, the privilege is qualified, and it rests within the discretion of the trial judge, in the administration of justice, to compel the physician, called as a witness, to testify to such matters when relevant to the inquiry.

5. **Evidence — Statements— Denials—Criminal Law—Miscarriage—Statutes.**

The testimony as to the statement of a woman on whom the defendant was charged with bringing on a miscarriage or abortion, in violation of the provisions of C. S., 4226-4227, that the defendant had paid the physician one-half of the $200 fee he had charged for such services, and uttered in the defendant's presence, is *held* competent with the other evidence in this case; and whether the defendant, under the circumstances, was so intoxicated that he did not understand, presented a question for the jury to determine as to whether the woman's statement was made in the hearing as well as in the defendant's presence; whether they were understood by him, or he denied them or remained silent.

APPEAL from *Long, J.,* at July Term, 1921, of FORSYTH.

The defendant was prosecuted for a breach of sections 4226 and 4227 of the Consolidated Statutes, upon the following bill of indictment:

"The jurors for the State upon their oath present: That Robert L. Martin, late of the county of Forsyth, on 28 June, in the year of our Lord one thousand nine hundred and twenty-one, with force and arms, at and in the county aforesaid, unlawfully and willfully and feloniously, did administer to Rosa Yow, a woman pregnant and quick with child, and did prescribe for said Rosa Yow and advised and procured said Rosa Yow to take certain medicines, drugs and other substances, and used and employed other instruments and money with intent to destroy said child, the same not being necessary to preserve the life of the mother, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

"And the jurors aforesaid, upon their oath, do further present, that Robert L. Martin, at time aforesaid, with force and arms, at and in county aforesaid, unlawfully, willfully and feloniously did administer to Rosa Yow, a pregnant woman, and prescribe for said pregnant woman, and advise and procure said Rosa Yow to take medicine, drugs and other things, with intent thereby to procure the miscarriage of said Rosa Yow, against the form of the statute in such case made and provided and against the peace and dignity of the State."

STATE *v.* MARTIN.

The jury convicted the defendant, who, after judgment was pronounced, appealed. He has assigned several errors, among them the refusal of his Honor to dismiss the action as in case of nonsuit. The State introduced only two witnesses, Dr. Mimms, and W. P. Yow, a brother of Rosa. The defendant offered no evidence. The evidence, most favorable to the State, tended to show the facts to be as herein stated. Rosa Yow was 18 or 19 years of age. Several months before the indictment she had married a man named Howard Daye, with whom she lived only a short time. On Saturday she went to her brother's house, which was four or five miles from Winston-Salem, and on the next Monday at three o'clock in the afternoon suffered an abortion, or miscarriage. On Monday night Dr. Mimms was called to see her, and found her in bed slightly bleeding. At the time of the abortion, or miscarriage, she was advanced in pregnancy from two to four months. The defendant accompanied Dr. Mimms on this visit, and told him that another doctor had charged $200 for the operation, one-half of which the defendant had paid by a check which he had destroyed after it was cashed. On this visit Dr. Mimms and the defendant went into Rosa's bedroom, the defendant seating himself on a sofa in one corner of the room. The defendant was drinking, and occasionally "opened up and said something," and Dr. Mimms, while not positive, thought the defendant was awake, and if awake, could hear Rosa's conversation with the witness. In the presence of the defendant Rosa told Dr. Mimms that since becoming pregnant she had desired a miscarriage, and had called on a physician who charged her $200; that the defendant had given her a check for $100, which, with $100 of her own money, she had paid this physician; that the physician when the money was paid took her into a room, laid her on a table, used some kind of instrument in packing something in her womb, and gave her medicine to take. She said this doctor, after getting his money, refused to visit her, and the defendant said he had phoned him to go and he ought to have gone. At one time the defendant paid Dr. Mimms $60. Defendant made another visit with Dr. Mimms. On the second Saturday night next preceding the first visit, the defendant and Rosa called at Dr. Mimms's office, but left there while he was attending a call; and five or six days before this visit Rosa had come to his office alone. In the presence of others she addressed the defendant in endearing terms, and they were very affectionate. There were other circumstances tending to show their intimate relation.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Wallace & Cohen, and Hastings & Whicker for defendant.*

ADAMS, J.   The defendant's motion to dismiss the action was based on the conception that the evidence taken as a whole was not sufficient to sustain a conviction; but in deciding this motion we need consider only such evidence as was favorable to the State, without special regard to that on which the defendant relied.   The immediate question is whether the evidence, when given a liberal yet reasonable construction, had legal sufficiency to convict.   If it was sufficient to support the charge in either count it was not permissible to withdraw it from the jury. Considering the evidence as correctly portraying the circumstances under which the abortion or miscarriage was accomplished, we are of opinion that the verdict of the jury was amply justified, and that his Honor properly denied the defendant's motion.   The association of the defendant and the woman, their call at Dr. Mimm's office a week before she went to her brother's home; the defendant's payment of one-half the fee charged by the physician who "packed something in her womb" and prescribed the "black medicine," and his subsequent solicitude in urging this physician to attend her; the defendant's visits to her in company with Dr. Mimms, together with various other circumstances were sufficiently convincing to warrant the jury in connecting the defendant with the unfortunate occurrence.   *S. v. Carlson,* 171 N. C., 818; *S. v. Clark,* 173 N. C., 745; *S. v. Bridgers,* 172 N. C., 882.

Dr. Mimms related the cricumstances attending his first visit to Rosa Yow, described her physical condition, and testified to certain statements made by her in the defendant's presence tending to implicate the defendant in the commission of the crime.   To this evidence the defendant excepted on the ground that it divulged information which the witness had confidentially acquired in his professional capacity.

At common law no privilege existed as to communications between physician and patient.   The physician, when called upon to testify, had no right to decline or refuse to disclose information on the ground that such information had been communicated to him confidentially in the course of his attendance upon or treatment of his patient in a professional capacity.   The public interest in the disclosure of all facts relevant to a litigated issue was deemed to be superior to the policy of recognizing, for the benefit of the patient, the inviolability of confidential communications.   Hence, statutes have been enacted in practically every jurisdiction making communications between physician and patient privileged from compulsory disclosure.   *Fuller v. Knights of Pythias,* 129 N. C., 323; *Smith v. Lumber Co.,* 147 N. C., 63; 28 R. C. L., 517.   In some jurisdictions the privilege is absolute, and in others qualified.   Our statute is in the latter class.   "No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character,

54—182

and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: *Provided,* that the presiding judge of a Superior Court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." C. S., 1798. In *Smith v. Lumber Co., supra,* this statute has been construed as extending not only to information orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe. In that opinion *Justice Hoke* further said: "And it is further held, uniformly, so far as we have examined, that the privilege established is for the benefit of the patient alone, and that same may be insisted on or waived by him in his discretion, subject to the limitations provided by the statute itself:

"1. That the matter is placed entirely in the control of the presiding judge, who may always direct an answer, when in his opinion same is necessary to a proper administration of justice.

"2. That the privilege only extends to information acquired while attending as physician in a professional capacity, and which information is necessary to enable him to prescribe for such patient as a physician." 14 Wigmore, sec. 2286c. If the privilege is for the benefit of the patient alone, how can the defendant invoke its aid? Even if it be contended that the privilege was available to him on the ground that some of the communications were made in his presence, that Rosa became a party to the crime by consenting to the abortion, that she is living, and the physician's testimony would tend not only to convict him, but to discredit her, and that the evidence objected to was for these reasons incompetent, a complete answer is found in the proviso of the statute and in his Honor's statement that in his discretion he not only permitted but required Dr. Mimms to testify when called as a witness for the State. His Honor no doubt did so because in his opinion the testimony of Dr. Mimms was necessary to a proper administration of justice.

The testimony of this witness as to statements made by the woman in the presence of the defendant was properly admitted. True, the witness said that the defendant had been drinking, and was sitting in a corner of the room when the statements were made; but he testified also that the defendant, while near enough to the woman to hear her remarks, occasionally said something himself, and that the witness, although not positive, thought the defendant was awake. It was the province of the jury to determine from the evidence whether the woman's statements were made in the hearing as well as in the presence of the defendant, whether they were understood by him, and whether he denied them or remained silent. *S. v. Bowman,* 80 N. C., 437; *S. v. Crockett,*

82 N. C., 599; *S. v. Burton,* 94 N. C., 948; *S. v. Randall,* 170 N. C., 762.

We have given due consideration to the remaining exceptions and find them to be without merit. His Honor presented both the law and the evidence in such manner as to enlighten the jury concerning the nature, scope, and merits of all matters in controversy between the State and the defendant. We find no error, and this will be certified to the Superior Court of Forsyth County.

No error.