## WILLIAM EDWARD CAPPS v. LAWRENCE LYNCH.

(Filed 21 September, 1960.)

1. Evidence § 14—

   The statutory provision making communications between physician and patient privileged, which privilege extends not only to information orally communicated by the patient but to knowledge obtained by the physician or surgeon by his own observation or examination, is a qualified and not an absolute privilege, and the judge of the Superior Court has the discretionary authority to compel disclosure of such communications if, in his opinion, such disclosure is necessary to a proper administration of justice and he so finds and enters such finding on the record.

2. Appeal and Error § 46—

   Where the record discloses that the court refused to determine a discretionary matter in the exercise of its discretion, but determined the question as a matter of law, the ruling is reviewable, and the objecting party is entitled to have the proposition reconsidered and passed upon as a discretionary matter.

3. Appeal and Error § 55—

   Where a ruling of the court is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light.

4. Evidence § 14—

   The qualified privilege attaching to communications between physician and patient is for the benefit of the patient alone, and the patient may waive such privilege not only by express contract but also by implication, and whether there has been waiver by implication must be determined largely upon the facts and circumstances of each particular case.

5. Same—

   While a patient does not waive his right to assert that a communication between himself and his physician is privileged by merely testifying as to his own physical condition or his injuries when he does not go into detail and does not refer to communications made to him by his physician, where the patient does voluntarily go into detail regarding the nature of his injuries and testifies in regard to the nature and results of the operation performed by the surgeon, he waives the privilege, and the surgeon is competent and compellable to testify in regard thereto, since the patient will not be allowed to close the mouth of the only witness in a position to contradict him and fully explain the facts.

6. Appeal and Error § 41—

   While ordinarily the exclusion of evidence can not be ascertained to be harmful when the record fails to show what the witness would have testified had he been permitted to answer, where the record discloses that the court refused to permit the witness to testify even in the absence of the jury and affirmatively shows that the testimony of the

witness was on a material point and that the appellee went to great lengths to preclude the testimony, the exclusion of the testimony may not be held harmless.

**7. Appeal and Error § 54—**

The Supreme Court has the discretionary power to grant a retrial of the whole case even though the errors relate to a single issue.

APPEAL by defendant from *McLean, J.,* February 1960 Term, of HENDERSON.

This is an action to recover for personal injuries and property damages resulting from a collision of automobiles. Plaintiff alleges that he sustained personal injury and property damage by reason of the actionable negligence of defendant. Defendant pleads sole negligence of plaintiff, contributory negligence, and counterclaim for damages.

The collision occurred 20 July 1959 on Capps Drive near the village of Balfour in Henderson County. Capps Drive is a narrow, winding, unpaved highway. Plaintiff and defendant owned the vehicles involved and were operating them at the time of the collision. Plaintiff was proceeding northwardly, defendant southwardly. The cars met and collided on a curve.

The jury resolved the issues in plaintiff's favor and awarded damages in the amount of $5,250.00. From judgment entered in accordance with the verdict defendant appealed and assigned errors.

*Williams, Williams & Morris for defendant, appellant.*

*Arthur J. Redden, M. F. Toms, Van Winkle, Walton, Buck & Wall and O. E. Starnes, Jr., for plaintiff, appellee.*

MOORE, J. Plaintiff testified that he suffered a broken bone in his right wrist as a result of the accident and that Dr. R. Joe Burleson, an orthopedic surgeon, operated on the wrist. Plaintiff pushed up his sleeve and exhibited his arm to the jury.

Direct examination continued:

"Q. Now, Mr. Capps, what did the doctor do to your arm?

"A. He operated on it and took out the - - -

"Mr. WILLIAMS: OBJECTION. I'll be glad to qualify him. He testified he was put to sleep and there is no way in the world he can know what he did.

"BY THE COURT: Objection overruled - exception. Go ahead. (Question read).

"A. I was operated on and the lunate bone was taken out.

"The defendant moves to strike - denied - exception."

On cross examination plaintiff testified in part as follows: "While I was in Asheville in the hospital, it is true that I was put to sleep for the treatment that Dr. Burleson gave to my wrist. I do not know of my own knowledge what took place. During that period I was asleep. As to how I know what took place while I was asleep, I read the doctor's report and that is the only way I knew about it."

At this juncture defendant again moved to strike plaintiff's testimony as to "what was done during the operation." The motion was denied and defendant excepted.

Thereafter, Dr. T. H. Joyner testified for plaintiff. After stating that he had examined plaintiff's arm during the week preceding the trial, he gave the following testimony: "I had had occasion to examine his arm and wrist prior to that time. I saw him on October 18, 1958 (nine months prior to collision). At that time he was complaining of pain in his wrist. I diagnosed it as arthritis and treated him. At that time he gave me a history that he had been cutting corn or something of that nature and that that had resulted in swelling. Osteochondritis is an inflammation. . . . It would be difficult to differentiate the pain of arthritis and osteochondritis. . . . I did not x-ray his wrist at that time, so I don't know whether there was any deterioration or absorption of the lunate bone back at that time." (Parentheses ours.)

Plaintiff did not call Dr. Burleson, the surgeon, as a witness.

The following took place in the absence of the jury:

Defendant called Dr. Burleson as a witness. Plaintiff inquired as to the purpose of the examination.

"THE COURT: I am not going to let you ask him any confidential communication in the presence of the jury. I think we have had enough of that. If you want to put him on the witness stand as your witness to examine him with reference to this plaintiff without their objection, you may do so, or if they want to call him, they may do so."

Dr. Burleson then testified with reference to his education, training and experience as a surgeon. He stated: "Osteochondritis specifically, we think of it meaning perhaps a dying or degeneration of a bone, perhaps due to circulatory deficit rather than real infection. . . . Well, I don't believe there would be any difference in the symptoms of osteochondritis and a type of degenerative arthritis." He then testified that it could not be determined which condition prevailed except by "x-ray or perhaps opening the bone up."

Q. Now, then, Doctor, did you have occasion to do surgery upon the plaintiff, William Edward Capps, at any time - - -

"The plaintiff OBJECTS.

"THE COURT: Let's don't go into that.

"MR. WILLIAMS: Your Honor will not even permit it to go into the record for the appeal to pass upon?

"THE COURT: This is a confidential matter between the doctor and the plaintiff and if they have no objection to you using him for that, you may do so. If they object to it, I will not let him say anything about it. He has no right to say anything about it without the consent of the plaintiff.

"MR. WILLIAMS: If your Honor pleases, the Supreme Court has said a good many times that the Court - - and your Honor is the presiding Court - has discretion in this matter.

"THE COURT: No, sir, they have not. They have just recently said, Mr. Williams, that you have no right to use a doctor that is confidential and that I have no right to let you use him. Now, that's the rule that I'm going to adhere to and I just don't understand how you can have a confidential relation with a person and then I can bring him in here and let him testify. Then the confidence is devoid and gone.

"MR. WILLIAMS: Would your Honor take a look at a decision in the Metropolitan Insurance Company - - -

"THE COURT: No sir, I don't need to read any decisions on it because that is my ruling on it."

Defendant contends that the court should have permitted and required Dr. Burleson to give testimony as to his examination, findings, surgical procedure, treatment and prognosis with respect to plaintiff's wrist. Defendant asserts: (1) the court was in error in that it ruled, as a matter of law, that it had no discretionary authority to require him to so testify, over the objection of plaintiff; and (2) the court erred in failing to rule that plaintiff had waived his right to object to such testimony.

Communications between physician and patient were not privileged at common law. *State v. Martin,* 182 N.C. 846, 849, 109 S.E. 74. Most of the states, if not all, have by statute made such communications privileged. N.C. G.S. 8-53 provides: "No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice."

"It is the accepted construction of this statute that it extends, not only to information orally communicated by the patient, but

to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe." *Smith v. Lumber Co.,* 147 N.C. 62, 64, 60 S.E. 717.

. The privilege established by the statute is for the benefit of the patient alone. It is not absolute; it is qualified by the statute itself. A judge of superior court at term may, in his discretion, compel disclosure of such communications if, in his opinion, it is necessary to a proper administration of justice and he so finds and enters such finding on the record. *Yow v. Pittman,* 241 N.C. 69, 84 S.E. 2d 297; *Sawyer v. Weskett,* 201 N.C. 500, 160 S.E. 575; *State v. Newsome,* 195 N.C. 552, 143 S.E. 187; *Insurance Co. v. Boddie,* 194 N.C. 199, 139 S.E. 228; *State v. Martin, supra.*

. In the instant case the trial judge was vested with discretionary authority in accordance with the rule stated above, to compel the surgeon to give testimony of his examination, findings, surgery, treatment and prognosis. This, counsel aptly brought to the attention of the court. The court denied categorically that he had such discretion and ruled as a matter of law that the proffered evidence was absolutely privileged. Where, as here, the court is clothed with discretion, but rules as a matter of law, without the exercise of discretion, the offended party is entitled to have the proposition reconsidered and passed upon as a discretionary matter. *Woody v. Pickelsimer,* 248 N.C. 599, 104 S.E. 2d 273; *Tickle v. Hobgood,* 212 N.C. 762, 194 S.E. 461; *In re Trust Co.,* 210 N.C. 385, 186 S.E. 510; *Temple v. Telegraph Co.,* 205 N.C. 441, 171 S.E. 630. "And it is uniformly held by decisions of this Court that where it appears that the judge below has ruled upon the matter before him upon a misapprehension of the law, the cause will be remanded to the superior court for further hearing in the true legal light." *State v. Grundler,* 249 N.C. 399, 402, 106 S.E. 2d 488.

We now come to the question of waiver of privilege. "That this purely statutory privilege may be waived is undisputed." 16 N. C. Law Review, 54. Since the privilege is that of the patient alone, it may be waived by him and cannot be taken advantage of by any other person. Stansbury: N. C. Evidence, s. 63, p. 110. *State v. Martin, supra.*

The waiver may be express or implied. Where the patient consents that the physician be examined as a witness by the adverse party with respect to the communication, the privilege is expressly waived. The privilege may be expressly waived by contract in writing.

*Fuller v. Knights of Pythias,* 129 N.C. 318, 40 S.E. 65. See also *Creech v. Woodmen of the World,* 211 N.C. 658, 191 S.E. 840.

"Unless a statute requires express waiver, the privilege may be waived by implication." 16 N. C. Law Review 54. The North Carolina statute does not require express waiver. The privilege is waived by implication where the patient calls the physician as a witness and examines him as to patient's physical condition, where patient fails to object when the opposing party causes the physician to testify, or where the patient testifies to the communication between himself and physician. 16 N. C. Law Review 55. *Hayes v. Ricard,* 244 N.C. 313, 93 S.E. 2d 540; *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84.

A patient may surrender his privilege in a personal injury case by testifying to the nature and extent of his injuries and the examination and treatment by the physician or surgeon. Whether the testimony of the patient amounts to a waiver of privilege depends upon the provisions of the applicable statute and the extent and ultimate materiality of the testimony given with repect to the nature, treatment and effect of the injury or ailment. The question of waiver is to be determined largely by the facts and circumstances of the particular case on trial.

"According to the weight of authority, one does not, by voluntarily testifying as to his own physical condition or to his injuries or his ailment, without going into detail and without referring to communications made to his physician, waive the privilege of the statute in favor of communications between physician and patient." 58 Am. Jur., Witnesses, s. 448, p. 253. *Harpman v. Devine,* (Ohio 1937) 10 N.E. 2d 776, 114 A.L.R. 789; *Polin v. Union Depot Co.,* (Minn. 1924) 199 N.W. 87; *Cohodes v. Traction Co.,* (Wis. 1912) 135 N.W. 879; *Williams v. Johnson,* (Ind. 1887) 13 N.E. 872. ". . . (W)here the patient voluntarily goes into detail regarding the nature of his injuries and either testifies to what the physician did or said while in attendance, or relates what he communicated to the physician, the privilege is waived, and the adverse party may examine the physician." 58 Am. Jur., Witnesses, s. 447, p. 253. *In re Roberto,* (Ohio 1958) 151 N.E. 2d 37; *Cuthbertson v. Cincinnati,* (Ohio 1957) 145 N.E. 2d 467; *Lazzell v. Harvey,* (Okla. 1935) 49 P. 2d 519; *Roeser v. Pease,* (Okla. 1913) 131 P. 534. The question of waiver of privilege is fully discussed with exhaustive citations of authority in 114 A.L.R., Annotation - Testimony by Physician - Privilege - Waiver, pp. 798-806.

In the instant case plaintiff testified in detail as to injury to his right wrist, surgery by Dr. Burleson and removal of a lunate

bone, and condition of the wrist following the operation. He stated that while he was under anesthesia Dr. Burleson removed a lunate bone from his wrist. He did not call Dr. Burleson as a witness. He testified, on cross examination, that in November 1958 he had a hurting in his wrist and saw Dr. Joyner once or twice about it. He stated: "It was not the same place in my wrist that this was." Dr. Joyner testified he diagnosed the condition as arthritis, the symptoms of arthritis and osteochondritis were difficult to differentiate, he did not x-ray the wrist and did not know whether there was any deterioration of the bone at that time. Dr. Burleson testified that it could not be determined which condition prevailed except by "x-ray or perhaps opening the bone up." According to plaintiff's testimony Dr. Burleson did "open up" the bone. The plaintiff did not consent that Dr. Burleson testify to the condition he found. The court refused to allow the testimony even in the absence of the jury. For this reason the record does not affirmatively show that the exclusion of Dr. Burleson's testimony was harmful to defendant's cause. But we gain the definite impression that there were pertinent facts within the knowledge of Dr. Burleson which plaintiff desired to suppress. To avoid the necessity of using Dr. Burleson as a witness plaintiff voluntarily entered the realm of hearsay and testified to the facts concerning the operation. He now contends that the statutory privilege closes the mouth of the only witness who is in position to contradict him and fully explain the facts. It seems clear that defendant sought to show by Dr. Burleson that there had been a prior injury to, or pre-existing ailment of, plaintiff's wrist, that plaintiff was suffering from osteochondritis at the time of the accident, and that the lunate bone was in a state of deterioration. Thus, the true condition of the bone as disclosed by the operation was very material to a proper and just determination of the extent of damage, if any, caused by the accident.

Plaintiff voluntarily testified with respect to the operation, its nature, procedure and results. In so doing he waived his statutory privilege and upon that trial Dr. Burleson was competent and compellable as a witness as to these matters. Under the circumstances the court erred in its ruling that plaintiff had not waived his statutory privilege. It is not the purpose of the statute "to conceal the truth. It is a shield and not a sword to those who can, or may not, speak." *Insurance Co. v. McKim,* (Ohio 1935) 6 N.E. 2d p. 12.

There were other assignments of error. We do not discuss these for the reason that there must be a new trial, and the errors, if any, probably will not recur upon a rehearing.

The errors discussed in this opinion both relate to the damage

issue. However, from examination of the record as a whole we are persuaded that the case should be retried upon all the issues raised by the pleadings, and in our discretion we so order. *Parker v. Belotta,* 215 N.C. 87, 200 S.E. 887. McIntosh: N. C. Practice and Procedure, Vol. 2, ss. 1597(3) and 1800(5), pp 103 and 241.

New trial.