MORGAN REED CATES, ET ALS v. STANLEY C. WILSON, ET ALS

No. 8618SC392

(Filed 16 December 1986)

1. **Damages § 10— medical malpractice—collateral source rule**

The trial court erred in a medical malpractice action by a mother and a child born with cerebral palsy and mental retardation against the mother's physician by admitting evidence of receipt of benefits by plaintiffs from collateral sources, including Medicaid payments and benefits provided gratuitously for care of the child by the government and the child's grandmother. There was prejudice despite the fact that the jury never reached the damages issue because the collateral source evidence could have served to confuse and mislead the jury on the issue of defendants' liability and allowed defendants to suggest that plaintiffs were already fully compensated and were trying to obtain a double recovery. N.C.G.S. § 108A-59.

2. **Physicians, Surgeons and Allied Professions § 16.1— medical malpractice—erroneous evidence of damages—directed verdict improper**

The trial court erred by granting defendants' motion for a directed verdict against the mother in her action for failure to diagnose a pregnancy where the court expressly based its ruling on insufficient evidence of damages, but improperly excluded evidence of medical expenses because they had been satisfied from collateral sources.

3. **Physicians, Surgeons and Allied Professions § 15; Evidence § 22.1— medical malpractice—former action against different defendant from same subject matter—dismissed—irrelevant**

In a medical malpractice action for failure to diagnose a pregnancy, the testimony of the doctor who eventually delivered the child that plaintiffs had sued him and that the suit had been dismissed was irrelevant. N.C.G.S. § 8C-1, Rule 402.

4. **Physicians, Surgeons and Allied Professions § 15.2; Evidence § 14.1— medical malpractice—opinions on liability by treating physicians**

On remand in a medical malpractice action, the trial court should exclude all opinion testimony on liability offered by defendants against plaintiffs from plaintiffs' treating physicians unless the court finds in the exercise of its discretion that such testimony is necessary to the proper administration of justice. N.C.G.S. § 8-53.

Cates v. Wilson

APPEAL by plaintiffs from *Walker, Judge.* Judgments entered 14 August 1985 in GUILFORD County Superior Court. Heard in the Court of Appeals 20 October 1986.

Joyce Reed Cates (plaintiff-mother) first visited Dr. Stanley C. Wilson (defendant) on 9 January 1978 for the express purpose of losing weight. At the time she was approximately 5'8" tall and weighed 241 pounds. Joyce Cates regularly saw Dr. Wilson, a specialist in family practice medicine, over the course of the next year. Initially, Dr. Wilson placed Ms. Cates on a 1,000 calorie diet.

In late April or early May of 1978, Ms. Cates engaged in a single act of sexual intercourse with a male friend. She was unmarried at the time.

On 13 June 1978, Dr. Wilson treated Ms. Cates for a urinary tract infection. On 6 July he treated her for a yeast infection. On 29 August 1978, Ms. Cates complained to Dr. Wilson of numbness in her hands. Dr. Wilson referred her to a neurologist who diagnosed her as suffering from carpal tunnel syndrome. Ms. Cates underwent surgery to correct this condition on 12 September 1978. Dr. Wilson treated Ms. Cates on 30 November 1978 for urinary complaints. Ms. Cates testified that she told Dr. Wilson on 30 November that she felt some movement in her stomach and that Dr. Wilson explained this movement as the result of a Y-shaped nerve which was left dangling after her gall bladder was removed and which was now hitting against her muscles and causing muscle spasms. Dr. Wilson, by contrast, testified that Ms. Cates did not complain of movement in her stomach and that he did not give her any explanation for movement in her stomach on 30 November 1978.

On 25 February 1979, Ms. Cates began experiencing periods of sharp back pain and an earache. On 26 February, Ms. Cates' mother made an appointment for her to see Dr. Wilson at 10:00 a.m. on 27 February. While showering on the morning of 27 February, Ms. Cates noticed a "horrible green discharge" pouring from her vaginal area. She went to her appointment at Dr. Wilson's office and saw him at approximately 10:00 a.m.

At this stage the facts are in dispute. According to Ms. Cates' version, Dr. Wilson examined her and told her that he thought she was pregnant. He ordered a pregnancy test for her.

She tested positive, but, since the test was not 100% accurate, he wanted her to obtain a sonogram to be sure that she was pregnant. Dr. Wilson told her that he had made an appointment for her with Dr. Doyle, a radiologist, for 2:00 p.m. that day. He instructed her to return home and then proceed to Dr. Doyle's office at 2:00 p.m.

Ms. Cates followed these instructions. She arrived at Dr. Doyle's office at 2:00 p.m. and Dr. Doyle performed a sonogram examination which revealed that she was pregnant and that the baby was in the birth canal ready to be born. She was sent from the sonogram examination back to Dr. Wilson's office, where she waited in his reception room from 2:45 p.m. to 4:15 p.m., when Dr. Wilson saw her. Dr. Wilson told her that she was pregnant and instructed her to go to the office of Dr. Lomax, an obstetrician-gynecologist.

Ms. Cates arrived at Dr. Lomax' office around 4:45 p.m. where she was examined by Dr. Wein, Dr. Lomax' associate, and was sent to Moses H. Cone Hospital Emergency Room. Ms. Cates gave birth early that evening to Morgan Cates (minor-plaintiff), who was born with cerebral palsy and mental retardation.

According to Dr. Wilson's version, he examined Ms. Cates on the morning of 27 February, and he could tell immediately that she was pregnant. He told her that she was pregnant. Dr. Wilson contacted Dr. Lomax, and the two agreed that Ms. Cates should undergo a sonogram examination. Dr. Wilson then sent her to Dr. Doyle's office. Dr. Wilson learned the results of the sonogram from Dr. Doyle between 12:00 noon and 1:30 p.m. and instructed Ms. Cates at this time to go to Dr. Lomax' office. Dr. Wilson next heard from Dr. Wein that Ms. Cates had arrived at their office.

Plaintiffs brought this action against Dr. Wilson and his medical partnership to recover damages allegedly caused by Dr. Wilson's negligence in failing to diagnose Joyce Cates' pregnancy prior to 27 February and in allowing many hours to pass after diagnosing her as pregnant before placing her "into the hands of a specialist in obstetrics" on 27 February. Plaintiffs alleged that "[t]he injuries due to perinatal asphyxia suffered by the minor plaintiff followed proximately from defendant Wilson's failure to diagnose pregnancy and to take steps to assure her prenatal care . . . on the morning of February 27, 1979." Plaintiff Morgan Cates

sought damages for pain and suffering and permanent injury, while his mother sought damages for lost services and earnings of Morgan during his minority and medical expenses which she has incurred and which she will incur on his behalf during his minority.

At trial, the court permitted defendants to introduce evidence of collateral source benefits for plaintiff Morgan Cates. At the same time, the court excluded evidence of plaintiffs' medical expenses on the ground that Medicaid had paid them. The court also permitted Dr. Wein, during his testimony, to refer to a separate lawsuit which plaintiffs had brought against him. In addition, Dr. Wein and several other treating physicians testified against plaintiffs by giving expert opinion testimony as witnesses for defendants.

The court granted defendants' motion for directed verdict against Joyce Cates at the close of all the evidence. The jury found that Morgan Cates was not injured or damaged by the negligence of Dr. Wilson and thus did not reach the issue of damages. Accordingly, the court entered judgments for defendants against each plaintiff respectively. Plaintiffs appealed.

*Clark & Wharton, by David M. Clark and John R. Erwin; and Colson, Hicks & Eidson, by Mike Eidson, for plaintiffs.*

*Henson, Henson, Bayliss & Coates, by Perry C. Henson, Jack B. Bayliss, Jr. and J. Victor Bowman, for defendants.*

WELLS, Judge.

[1] Plaintiffs contend the court erred in admitting evidence of receipt of benefits to plaintiffs from collateral sources. We agree.

Plaintiffs called Julia Cates, Morgan's grandmother, as a witness. She testified on direct examination about the circumstances surrounding Morgan's birth and his condition. Defendants were permitted to elicit the following information from her on cross-examination: all of plaintiffs' medical bills had been paid by Social Services (Medicaid); Morgan's attendance at Gateway Education Center (a cerebral palsy school) is free; Joyce Cates receives monthly welfare checks for the benefit of Morgan; Morgan's father pays $30 per week in child support; and Julia Cates allows Morgan and his mother to live with her rent-free,

helps pay for their food, and provides an automobile for transporting Morgan to and from school.

Dr. Paul Deutsch, an expert in research and evaluation of habilitation needs of handicapped persons, testified for plaintiffs concerning the needs and costs for Morgan's current and future care. Throughout Dr. Deutsch's cross-examination, defendants attempted to show the availability of gratuitous government-funded sources of funding for Morgan's current and future care. In particular, defendants were allowed to elicit from Dr. Deutsch that government-funded care facilities were available for mentally retarded persons such as Morgan throughout their lifetime and that these facilities were available free of charge in many instances.

It is well established in this jurisdiction that evidence of a plaintiff's receipt of benefits for his or her injury or disability from sources collateral to defendant generally is not admissible. This principle is known as the collateral source rule. Our courts have invoked this doctrine to exclude evidence of workers' compensation benefits, *Spivey v. Wilcox Company*, 264 N.C. 387, 141 S.E. 2d 808 (1965); evidence that plaintiff's medical expenses had been paid by his employer as the result of hospital insurance carried for the benefit of its employees; *Young v. R.R.*, 266 N.C. 458, 146 S.E. 2d 441 (1966); and evidence that plaintiff received sick leave pay, *Fisher v. Thompson*, 50 N.C. App. 724, 275 S.E. 2d 507 (1981); *Marley v. Gantt*, 72 N.C. App. 200, 323 S.E. 2d 725 (1984); *Andrews v. Peters*, 75 N.C. App. 252, 330 S.E. 2d 638, *disc. rev. denied*, 315 N.C. 182, 337 S.E. 2d 65 (1985).

This evidence "is inadmissible because it is not only irrelevant but also incompetent." *Spivey, supra.* "A tort-feasor should not be permitted to reduce his own liability for damages by the amount of compensation the injured party receives from an independent source." *Fisher, supra.*

Defendants contend that the collateral source rule should not apply to exclude evidence of gratuitous benefits such as Medicaid received by plaintiffs from governmental sources. However, the prevailing view in jurisdictions which have considered this question is that the collateral source rule does apply to benefits which are provided gratuitously by the government. *Johnson v. Baker*, 11 Kan. App. 2d 274, 719 P. 2d 752 (1986). *See, generally, Annot.*

Cates v. Wilson

77 A.L.R. 3d 366. In *Werner v. Lane*, 393 A. 2d 1329 (Me. 1978) the Court held that the collateral source rule applied to care and treatment furnished to plaintiff at a mental health institute pursuant to a free state program. The Court explained:

> The overwhelming weight of authority in the country is to the effect that the fact necessary medical and nursing services are rendered gratuitously to one who is injured as a result of the negligence of another should not preclude the injured party from recovering the reasonable value of those services as part of his compensatory damages in an action against the tortfeasor. This is known as the collateral source rule. Stated otherwise, it means that, if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor, he is still permitted to have full recovery against him.
>
> . . .
>
> The rule has been extended to cases where the gratuitous services were furnished by a state supported agency or public charity.

In *Bennett v. Haley*, 132 Ga. App. 512, 208 S.E. 2d 302 (1974), the Court specifically held that the collateral source rule applied to Medicaid payments. The Court stated in this regard that: "The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source."

Defendants contend that "[t]he application and operation of [N.C. Gen. Stat.] § 108A-59 clearly shows that Medicaid benefits are assigned directly and specifically to the State and are not a source for the plaintiffs to obtain a double recovery by invoking the application of a collateral source rule." G.S. § 108A-59 provides, in pertinent part, that by accepting medical assistance from the State, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise, to which he may be entitled.

We hold that G.S. § 108A-59(a) does not remove Medicaid benefits from the protection of the collateral source rule. Plaintiffs are entitled to have the issue of Dr. Wilson's liability determined without evidence of benefits from collateral sources like

Medicaid included for the jury's consideration notwithstanding the State's right to reimbursement for benefits pursuant to G.S. § 108A-59. To hold otherwise would serve to transfer responsibility for malfeasance from the tortfeasor to the victim and the State. Availability of public assistance should not operate to reduce a tortfeasor's legal liability. *See Fisher, supra.*

In light of the foregoing, we hold that the collateral source rule applies to plaintiffs' Medicaid benefits. The court thus erred in admitting evidence of these payments by Medicaid. We further hold that the court, pursuant to the collateral source rule, should have excluded the evidence regarding free schooling, welfare, child support, gratuitous contributions by plaintiff's grandmother and the availability of free future care at public expense. We now consider whether these errors are sufficiently prejudicial to require a new trial.

Defendants contend that any error regarding the admission of collateral source evidence was not prejudicial. Specifically, defendants maintain that the collateral source evidence only pertained to the issue of damages and not the threshold issue of liability. Because the jury never reached the damages issue by reason of its conclusion that Dr. Wilson was not negligent, defendants contend that this evidence, even if improperly admitted, could not have prejudiced plaintiffs' case because it related to an issue which the jury did not reach. We disagree.

In *Fisher, supra,* we held that the improper admission of collateral source evidence was not prejudicial error. After determining that the trial court improperly admitted evidence of plaintiff's sick pay, the Court further held that the error was not prejudicial since the evidence concerned the issue of damages and the jury did not reach this issue by reason of its conclusion that plaintiff was contributorily negligent. *Id.* However, the *Fisher* decision assumes that the improperly admitted collateral source evidence did not affect the liability issue without elaborating on this point. Further, *Fisher* examined the prejudicial impact of evidence from one collateral source rather than the cumulative effect of evidence from many collateral sources, which is the question now presented for our review in the case *sub judice.* Accordingly, *Fisher* does not control the result here.

In *Spivey, supra,* the Court compared the impropriety of references to collateral sources of benefits for a plaintiff to the impropriety of references to the presence or absence of liability insurance for a defendant. Regarding reference to liability insurance, our Supreme Court has stated:

> The existence of insurance covering defendant's liability in a negligence case is irrelevant to the issues involved. It has no tendency to prove negligence or the *quantum* of damages. It suggests to the jury that the outcome of the case is immaterial to defendant and the insurer is the real defendant and will have to pay the judgment. It withdraws the real defendant from the case and leads the jury "to regard carelessly the legal rights" of the real defendant.

> "No circumstance, a court has said, is more surely calculated to cause a jury to render a verdict against a defendant, without regard to the sufficiency (weight) of the evidence, than proof that the person against whom such verdict is sought is amply protected by indemnity insurance." 56 A.L.R. 1422.

*Fincher v. Rhyne,* 266 N.C. 64, 145 S.E. 2d 316 (1965). The Court further noted: "Where testimony is given, or reference is made, indicating directly and as an independent fact that defendant has liability insurance, *it is prejudicial* (emphasis supplied), and the court should, upon motion therefor aptly made, . . . order a mistrial." *Id.*

Similarly, in the instant case, the collateral source evidence admitted could have served to confuse and mislead the jury on the issue of defendants' liability. Defendants' ability to emphasize repeatedly during the cross-examination of Julia Cates and Dr. Deutsch that numerous gratuitous avenues of compensation existed for plaintiffs' benefit substantially eroded plaintiffs' verdict-worthiness by suggesting to the jury that plaintiffs were already fully compensated and were trying to obtain a double recovery.

In *Cook v. Eney,* 277 So. 2d 848, *cert. denied,* 285 So. 2d 414 (Fla. App. 1973), plaintiff appealed from a judgment entered pursuant to a jury verdict which found that defendant was not liable for medical malpractice. The Court held that the trial court erred in permitting plaintiff to be cross-examined regarding his receipt

of workmen's compensation and social security benefits. *Id.* The Court then held that this error was sufficiently prejudicial to warrant a new trial. *Id.* The Court reasoned:

> The only question before the jury was whether the appellant's injuries resulted from the appellee's negligence. Appellee's suggestion that evidence of receipt of collateral benefits would be restricted to the issue of damages, and would not affect the determination of liability, ignores that the evidence was presumably considered without qualification as bearing on a basic fact essential to liability. It cannot be said with any degree of certainty that the jury did not determine that since the appellant was otherwise being taken care of, there should be no recovery against appellee in tort. The admission of evidence of receipt of other benefits may indeed have led the jury to believe that appellant was trying to obtain a double or triple payment for one injury.

*Id. See also Williams v. Pincombe,* 309 So. 2d 10 (Fla. App. 1975).

Following the reasoning of *Fincher, supra* and *Cook, supra,* we hold that plaintiffs are entitled to a new trial "free from the error of admitting testimony or evidence concerning the receipt of benefits by [plaintiffs] from collateral sources." *Cook, supra.*

[2] Plaintiff-mother contends that the court erred in granting defendants' motion for a directed verdict against her at the close of all the evidence. We agree.

In general,

> [i]n considering any motion for directed verdict [under N.C. Gen. Stat. 1A-1, Rule 50], the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant v. Nationwide Mutual Fire Insurance,* 313 N.C. 362, 329 S.E. 2d 333 (1985). The court may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974).

Our Supreme Court has stated that two claims for relief may arise when an unemancipated minor child is injured by the negligence of another: (1) the claim on behalf of the child to recover for his losses caused by the injury, and (2) a claim by the parent for parental losses caused by (a) loss of services during the child's minority, and (b) medical expenses reasonably necessary for treating the injury. *Flippin v. Jarrell*, 301 N.C. 108, 270 S.E. 2d 482 (1980). *See also* 3 N.C. Family Law Sec. 241 (4th ed. 1981) where it is stated that:

> Two causes of action may immediately spring into existence when any unemancipated minor suffers personal injuries by reason of the tortious conduct of another: (1) the right of the child to recover for his mental and physical pain and suffering, and the impairment of earning capacity after attaining majority; and (2) the right of the parent to recover for loss of services of the child during minority, and other pecuniary expenses incurred or likely to be incurred by the parent as a consequence of the injury, including expenses of medical treatment.

The trial court expressly based its directed verdict on the insufficiency of the evidence on the issue of damages, not on the issue of negligence. Plaintiffs attempted to introduce the medical bills associated with the care of Morgan following his birth. The court excluded this evidence on the ground that Medicaid had paid these bills. Plaintiffs have placed these bills in the record on appeal for our review.

We hold that the court improperly excluded evidence of Morgan's medical expenses and that this evidence, taken with the testimony of Dr. Deutsch pertaining to the cost of care for Morgan during his minority, when viewed in the light most favorable to plaintiff-mother, was sufficient to justify a jury award for Morgan's medical expenses and other care necessitated by his injury. As emphasized, *supra*, plaintiffs were entitled to present their case free from any references to collateral sources of benefits for plaintiff-minor. Similarly, plaintiffs were also entitled to present all relevant evidence on the issue of damages without exclusion of evidence of expenses satisfied from collateral sources. Accordingly, we hold that the court improperly granted defendants' motion for directed verdict against plaintiff-mother.

We note, however, that, despite plaintiff-mother's contention to the contrary, it appears that plaintiffs did not present sufficient evidence of the value of the child's services during minority to justify a verdict for these damages.

We now address plaintiffs' remaining contentions which are likely to arise on remand.

[3] Plaintiffs contend the court erred in permitting Dr. Wein, the doctor who delivered Morgan, to refer to a separate lawsuit which plaintiffs had brought against him. In particular, Dr. Wein was permitted to testify that plaintiffs had sued him on 25 February 1982 and that the suit had been dismissed on 25 July 1984.

We hold that evidence of plaintiffs' separate lawsuit against Dr. Wein was irrelevant under N.C. Gen. Stat. § 8C-1, Rule 402 of the North Carolina Rules of Evidence, and that its admission contravenes the strong public policy favoring settlement of controversies out of court. *See* Commentary to N.C. Gen. Stat. § 8C-1, Rule 408; *Ramsey v. Camp*, 254 N.C. 443, 119 S.E. 2d 209 (1961); *Dixie Lines v. Grannick*, 238 N.C. 552, 78 S.E. 2d 410 (1953). Defendants have not asserted, nor do we see, any grounds for admitting this evidence. Accordingly, we hold that on remand the court must exclude all references to plaintiffs' lawsuit against Dr. Wein, assuming plaintiffs make timely objection to the admission of this evidence.

[4] Plaintiffs contend the court erred in permitting their treating physicians to testify against them by giving expert opinion testimony as witnesses for defendants. As one example, plaintiffs cite Dr. Wein, who testified that, based upon his examination and treatment of Joyce Cates in both his office and at the hospital on the day of birth, it was his opinion that the events of 27 February made no difference "as to the outcome of Morgan Cates' present condition."

In general, a confidential or fiduciary relationship exists between patient and treating physician. *See Black v. Littlejohn*, 312 N.C. 626, 325 S.E. 2d 469 (1985). *See also Hewett v. Bullard*, 258 N.C. 347, 128 S.E. 2d 411 (1962). This relationship is one of trust and confidence in which the utmost good faith must be exercised. 70 C.J.S. Physicians & Surgeons § 36; *Black, supra*.

N.C. Gen. Stat. § 8-53 establishes a physician-patient privilege. The statute provides, in pertinent part, that:

> No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.

The purpose of the statute is "to create a privileged relationship between physician and patient[,]" *Lockwood v. McCaskill*, 261 N.C. 754, 136 S.E. 2d 67 (1964), and, in particular, "to induce the patient to make full disclosure that proper treatment may be given, to prevent public disclosure of socially stigmatized diseases, and in some instances to protect patients from self-incrimination[,]" *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E. 2d 326 (1962).

The privilege established by G.S. § 8-53 is not absolute, but qualified. *Sims, supra.* Specifically, the trial court

> may compel the physician or surgeon to disclose communications and information obtained by him "if in his (the judge's) opinion the same is necessary to a proper administration of justice." In such case the judge shall enter upon the record his finding that the testimony is necessary to a proper administration of justice. [Citations omitted.]

*Id.* "The statute affords the trial [judge] wide discretion in determining what is necessary for a proper administration of justice." *State v. Efird*, 309 N.C. 802, 309 S.E. 2d 228 (1983). Further, a patient may waive the privilege. *Capps v. Lynch*, 253 N.C. 18, 116 S.E. 2d 137 (1960). The waiver may be express or implied. *Id.*

The privilege is waived by implication where the patient calls the physician as a witness and examines him as to patient's physical condition, where patient fails to object when the opposing party causes the physician to testify, or where the patient testifies to the communication between himself and physician.

*Id.*

Plaintiffs do not contend that it was improper for their treating physicians to testify as "fact" witnesses regarding their treatment and diagnosis of plaintiffs. Plaintiffs thus implicitly concede that they have waived the statutory protection afforded by G.S. § 8-53 regarding "*information*" obtained by their treating physicians in the course of treatment and diagnosis. It does not necessarily follow, however, that an implied waiver as to factual or informational evidence should be extended to include opinion testimony on the issue of liability, and because G.S. § 8-53 enunciates a strong public policy to protect the confidentiality of the physician-patient relationship we are not persuaded that implied waiver should be so extended. We, therefore hold that unless there has been an express waiver, such opinion testimony should not be allowed absent a finding by the trial court that such testimony is necessary to the proper administration of justice.

As under the qualified statutory protection established by G.S. § 8-53 for confidential information, the trial court should be able to permit plaintiffs' treating physicians to give expert opinion testimony on liability if it finds in the exercise of its discretion that such testimony is necessary to a proper administration of justice. Accordingly, we hold that, on remand, the trial court should exclude all opinion testimony on liability offered by defendants against plaintiffs from plaintiffs' treating physicians unless it finds in the exercise of its discretion that such testimony is necessary to a proper administration of justice.

Plaintiffs contend that the court improperly instructed the jury. Specifically, plaintiffs contend that (1) the court should have instructed the jury that defendants would be liable if Dr. Wilson's negligence aggravated a pre-existing condition; (2) the instructions violate the requirements established in *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984); (3) the court should have instructed that the fault of the mother, if any, should not be considered

regarding Morgan Cates' right to recover; and (4) the court should have instructed the jury that expert testimony is not necessary to establish medical negligence if what was done in the treatment of a patient is within common knowledge. We have reviewed these contentions and hold that, if any errors did occur in instructing the jury, such errors are not likely to recur on retrial. We also do not reach plaintiffs' remaining argument as the issue it addresses is not likely to arise on remand.

For the reasons stated, the verdict and judgment covering plaintiff Morgan Cates and the judgment covering plaintiff Joyce Cates are vacated and the cause is remanded for a new trial for both plaintiffs on the issues of liability and damages.

New trial.

Judges BECTON and ORR concur.