IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-133

No. 85A21

Filed 5 November 2021

IN THE MATTER OF: I.E.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 November 2020 by Judge William J. Moore in District Court, Robeson County. This matter was calendared for argument in the Supreme Court on 30 September 2021, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*J. Edward Yeager, Jr., for petitioner-appellee Robeson County Department of Social Services.*

*Lindsey Reedy for appellee Guardian ad Litem.*

*Garron T. Michael for respondent-appellant mother.*

ERVIN, Justice.

Respondent-mother Joanna W. appeals from an order entered by the trial court terminating her parental rights in her daughter, I.E.M. [1] After careful consideration of respondent-mother's challenges to the trial court's termination order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

---

[1] I.E.M. will be referred to throughout the remainder of this opinion as "Iris," which is a pseudonym used for ease of reading and to protect the identity of the juvenile.

The Robeson County Department of Social Services became involved with Iris' family in July 2018 because of concerns arising from respondent-mother's mental health and the manner in which she supervised Iris. On 3 October 2018, DSS received a neglect referral alleging that respondent-mother, who had been living with Iris in a shelter as the result of their displacement following a recent hurricane, had been involuntarily committed and diagnosed as suffering from paranoid schizophrenia.

On 5 October 2018, DSS filed a juvenile petition alleging that Iris was a neglected juvenile and obtained nonsecure custody of the child.[2] In its petition, DSS alleged that a social worker had learned that respondent-mother was hearing voices and had attempted to leap from a relative's moving car after "God told her to free herself." In addition, DSS alleged that respondent-mother had admitted to a social worker that, while she had been hearing voices, she did not know that she had been diagnosed as suffering from a mental health condition. After the social worker and respondent-mother discussed possible safety placements for Iris, DSS placed Iris with a maternal cousin.

After a hearing held on 16 January 2019, Judge Daniels entered an adjudication order finding that Iris was a dependent juvenile and a separate

---

[2] On 16 January 2019, Judge Judith M. Daniels allowed DSS to assert that Iris was a dependent, as well as a neglected, juvenile.

dispositional order finding that respondent-mother had undergone a psychological examination and that the examining psychologist had concluded that respondent-mother would be "unable to parent [Iris] for the indefinite future." As a result, Judge Daniels ordered that Iris remain in DSS custody and approved a primary plan of reunification with respondent-mother and a secondary plan of adoption.

¶ 5    Following a permanency planning hearing held on 20 November 2019, the trial court entered an order on 15 January 2020 finding that respondent-mother had entered into a Family Services Case Plan with DSS and was seeing a "peer support person" at the Stephens Outreach Center for sixteen hours per week. In addition, the trial court found that respondent-mother's therapist believed that respondent-mother remained unable to care for herself or Iris as a result of her severe paranoid schizophrenia and approved a primary permanent plan for Iris of adoption, with a secondary plan of guardianship with a relative.

¶ 6    On 20 December 2019, DSS filed a petition seeking to have respondent-mother's parental rights in Iris terminated on the grounds that she had willfully allowed Iris to remain in a placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that had led to Iris' removal from her home, N.C.G.S. § 7B-1111(a)(2); willfully failing to pay a reasonable portion of the cost of the care that Iris had received during the six month period immediately preceding the filing of the termination petition, N.C.G.S. § 7B-

1111(a)(3); and dependency, N.C.G.S. § 7B-1111(a)(6). The issues raised by the termination petition came on for hearing before the trial court at the 23 September 2020 session of the District Court, Robeson County. On 18 November 2020, the trial court entered an order concluding that respondent-mother's parental rights in Iris were subject to termination on the basis of her willful failure to make reasonable progress toward correcting the conditions that had led to Iris' removal from her home, N.C.G.S. § 7B-1111(a)(2), and dependency, N.C.G.S. § 7B-1111(a)(6), and that the termination of respondent-mother's parental rights in Iris would be in Iris' best interests. Respondent-mother noted an appeal to this Court from the trial court's termination order.

¶ 7        A termination of parental rights proceeding is conducted in two phases. At the adjudicatory phase, the trial court determines whether any of the statutory grounds for terminating a parent's parental rights delineated in N.C.G.S. § 7B-1111 exist, *see* N.C.G.S. § 7B-1109 (2019), with the petitioner being required to prove the existence of any applicable ground for termination by clear, cogent, and convincing evidence. *In re A.U.D.*, 373 N.C. 3, 5–6, (2019). In the event that the trial court determines that the petitioner has established the existence of at least one ground for termination, the case moves to the dispositional phase, at which the trial court must "determine[ ] whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019).

¶ 8    In seeking relief from the trial court's termination order, respondent-mother argues that the trial court erred by determining that her parental rights in Iris were subject to termination.  In reviewing the trial court's adjudication decision, we are required to determine whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether its findings, in turn, support the trial court's conclusions of law.  *In re E.H.P.*, 372 N.C. 388, 392 (2019).  According to well-established North Carolina law, unchallenged findings of fact are "deemed supported by competent evidence and are binding on appeal."  *In re T.N.H.*, 372 N.C. 403, 407 (2019).  On the other hand, the trial court's conclusions of law are subject to de novo review by an appellate court.  *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 9    As an initial matter, we will examine whether the trial court erred in determining that respondent-mother's parental rights in Iris were subject to termination on the basis of a willful failure to make reasonable progress to correct the conditions that had led to Iris' removal from respondent-mother's home pursuant to N.C.G.S. § 7B-1111(a)(2).  A parent's parental rights in a child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) in the event that the parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile."  N.C.G.S. § 7B-1111(a)(2).  The reasonableness of a

parent's progress in addressing the conditions that led to the child's removal from the family home "is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." *In re J.S.*, 374 N.C. 811, 815 (2020) (cleaned up).

¶ 10 In challenging the trial court's determination that respondent-mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2), respondent-mother argues that the trial court acted on the basis of a misapprehension of law relating to this ground for termination consisting of an erroneous belief that any evidence concerning progress that respondent-mother had made after the filing of the termination petition was irrelevant. Although this Court has clearly held that, "where it appears that the judge below has ruled upon the matter before him upon a misapprehension of the law, the cause will be remanded to the [trial] court for further hearing in the true legal light[,]" *Capps v. Lynch*, 253 N.C. 18, 22, (1960) (cleaned up), we conclude that respondent-mother has failed to demonstrate that the trial court acted on the basis of any misapprehension of the applicable law in the course of finding that respondent-mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2).

¶ 11 In attempting to persuade us that her challenge to the trial court's termination order has merit, respondent-mother begins by directing our attention to the testimony provided by Kylene Chavis, who served as respondent-mother's peer

support specialist at the Stephens Outreach Center and had begun assisting respondent-mother after the filing of the termination petition. When respondent-mother's trial counsel asked Ms. Chavis to describe the manner in which she had provided respondent-mother with support, counsel for DSS stated that, "Judge, if I may object to this. Your Honor, this is actually — what she's testifying to is after the date the petition was filed, so not relating to adjudication, Your Honor." During the ensuing colloquy between the trial court and counsel, the trial court asked respondent-mother's trial counsel, "How is it — how is what happened after the petition was filed relevant?" After considering the response that respondent-mother's trial counsel made to this inquiry and the other arguments that were made by the parties, the trial court overruled DSS' objection.

¶ 12        Although respondent-mother acknowledges that the trial court overruled the DSS objection, she insists that this aspect of her challenge to the trial court's termination order has merit on the theory that the trial court "never corrected its incorrect statement of the law regarding the relevance of post-petition facts." However, despite the fact that trial counsel for DSS clearly misstated the applicable law, the existence of such a misstatement by counsel for a party coupled with a related inquiry posed by the trial court to counsel for another party cannot be equated to an affirmative "statement of the law" or the adoption of the position espoused by DSS' trial counsel by the trial court, particularly given that the trial court signaled its

rejection of the argument advanced by counsel for DSS by overruling that party's objection.

¶ 13      In addition, respondent-mother attempts to buttress her challenge to the trial court's termination order by noting that the trial court did not make any findings of fact predicated upon Ms. Chavis' testimony and suggesting that the trial court's statement in Finding of Fact No. 10 conflicts with Ms. Chavis' assertion that she had not provided respondent-mother with any financial support.  The trial court is not, however, "required to make findings of fact on all the evidence presented, nor state every option it considered."  *In re E.S.*, 378 N.C. 8, 2021-NCSC-72, ¶22 (citations omitted).  For that reason, the absence of any findings of fact that appear to be directly based upon Ms. Chavis' testimony does not establish that the trial court failed to consider what Ms. Chavis had to say.  In addition, the statement contained in Finding of Fact 10 with which respondent-mother takes issue is supported by the testimony of a social worker that the peer support provided by the Stephens Outreach Center included a financial component, which the social worker defined as "somebody helping [respondent-mother] manage her money," an interpretation of Finding of Fact No. 10 that appears to be consistent with Ms. Chavis' testimony that she would "consistently contact [respondent-mother] and make sure" she was paying her bills.  Thus, the trial court's treatment of Ms. Chavis' testimony does not establish that it acted upon the basis of a misapprehension of law in deciding that respondent-

mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2).

On the other hand, an examination of the record developed before the trial court indicates that other witnesses provided testimony concerning events that occurred after the filing of the termination petition. For example, the maternal cousin who served as Iris' caretaker throughout the pendency of the entire proceeding testified about respondent-mother's visits with Iris, including a visit that occurred during the same month as the one in which the termination hearing was held. Similarly, respondent-mother testified concerning her recent visits with Iris, her current living situation, and the attempts that she had made to find a support person. Thus, the trial court did, in fact, hear considerable testimonial evidence relating to the period of time that followed the filing of the termination petition.

Finally, the record developed at the adjudication hearing contains substantial documentary evidence relating to the period of time after the filing of the termination petition. For example, the trial court took judicial notice of the file from the underlying juvenile proceeding, a set of documents that included orders associated with two hearings that occurred after the filing of the termination petition. In addition, DSS introduced, over respondent-mother's objection, a one hundred page exhibit that was titled "Termination of Parental Rights Time Line" and contained 809 numbered paragraphs detailing a considerable amount of relevant information

concerning the period of time extending from the filing of the initial juvenile petition until a few weeks prior to the termination hearing. The trial court expressly stated in its termination order that it had taken the timeline into consideration in reaching its decision.

¶ 16 According to respondent-mother, however, the trial court should have refrained from considering the timeline because it was "replete with hearsay statements" and was "based primarily upon third-party reports or out-of-court statement[s] made to [DSS] by a variety of declarants." A general objection of the type that respondent-mother lodged against the timeline is insufficient to show that the trial court committed an error of law, however, given that, "where a judge sits without a jury, the trial court is presumed to have disregarded any incompetent evidence and relied upon the competent evidence." *In re J.M.J.-J.*, 374 N.C. 553, 558 (2020) (cleaned up). Respondent-mother has failed to identify any inadmissible hearsay evidence upon which the trial court erroneously relied in the course of making the findings of fact contained in its termination order and has failed, for that reason, to establish that the trial court erred by considering the timeline in deciding that respondent-mother's parental rights in Iris were subject to termination.

¶ 17 Thus, the record clearly reflects that the trial court overruled a relevance-based objection to the admission of testimony relating to events that occurred after the filing of the termination petition and that a substantial amount of evidence

concerning such post-petition events was received during the adjudication hearing in both testimonial and documentary form. On the other hand, respondent-mother has failed to offer anything more than mere speculation in attempting to show that the trial court erroneously failed to consider evidence relating to the period of time following the filing of the termination petition. Such a showing is simply insufficient "to overcome the presumption of correctness at trial." *State v. Ali*, 329 N.C. 394, 412 (1991). For that reason, we hold that respondent-mother's contention that the trial court acted on the basis of a misapprehension of law in the course of finding that respondent-mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) lacks merit and that, since this argument constitutes the only basis upon which respondent-mother has challenged the trial court's determination that respondent-mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2), the trial court did not err by finding the existence of this ground for termination.

¶ 18    Having upheld the trial court's determination that at least one ground for terminating respondent-mother's parental rights in Iris existed, we need not address the validity of respondent-mother's challenge to the trial court's determination that respondent-mother's parental rights in Iris were subject to termination for dependency pursuant to N.C.G.S. § 7B-1111(a)(6). *See In re A.R.A.*, 373 N.C. 190, 194 (2019) (stating that "a finding of only one ground is necessary to support a

termination of parental rights").  In view of the fact that the trial court did not err by finding that respondent-mother's parental rights in Iris were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) and the fact that respondent-mother has not advanced any challenge to the trial court's determination that the termination of her parental rights would be in Iris' best interest, we affirm the trial court's termination order.

AFFIRMED.